## Case No. 16,526.

UNITED STATES v. TINKLEPAUGH et al.

[3 Blatchf. 425.] 1

Circuit Court, S. D. New York. Jan. 25, 1856.

OBSTRUCTING JUSTICE — RESISTING EXECUTION OF PROCESS—INDICTMENT—DEPUTY MARSHAL.

1. What facts are necessary to be established to constitute the offence, under section 22 of the act of April 30, 1790 (1 Stat. 117), of wilfully resisting an officer of the United States in the execution of process, considered.

[Cited in U. S. v. Martin, 17 Fed. 153. Distinguished in U. S. v. Terry, 41 Fed. 774.]

2. What an indictment for such offence must allege, considered.

3. Where an indictment for such offence showed that the process resisted was a warrant of attachment issued by the district court against a vessel, on the filing, by the district attorney, of a libel for a forfeiture of the vessel: Held, that it was not necessary the indict-

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

ment should show what averments the libel contained.

4. It appearing, by the indictment. that the warrant was valid on its face, any resistance to the execution of the warrant was indictable under the act, even though the libel was not sufficient to authorize the issuing of the warrant.

5. A deputy of a marshal of the United States is an officer of the United States, within said section 22, authorized to serve process.

[Cited in U. S. v. Martin, 17 Fed. 153.]

This was a motion to quash an indictment [against Edward L. Tinklepaugh and others] founded upon the 22d section of the act of April 30, 1790 (1 Stat. 117), in which, among other things, it is provided that, if any person or persons shall knowingly and wilfully obstruct, resist or oppose any officer of the United States in serving or attempting to serve or execute any mesne process or warrant, or any rule or order of the courts of the United States, or any other legal or judicial writ or process whatsoever, such person or persons shall, on conviction, be imprisoned, not exceeding twelve months, and fined, not exceeding three hundred dollars.

John McKeon, U. S. Dist. Atty., and Philip J. Joachimsen, for the United States.

Francis B. Cutting and Horace F. Clark, for defendants.

INGERSOLL, District Judge. To constitute the offence created by the act of congress in question, it is necessary that three distinct facts should be established. Those three distinct facts are: (1) That a legal process, warrant, writ, rule or order, was issued by a court of the United States; (2) that such legal process, warrant, writ, rule or order, after the same was issued, was in the hands of some officer of the United States for service, who had authority, by the laws of the United States, to serve the same; (3) that, after such legal process, warrant, writ, rule or order was in the hands of such officer for service, some one knowingly and wilfully obstructed, resisted, or opposed him in serving or attempting to serve or execute the same. These are all the facts necessary to constitute the offence. An indictment founded upon the act must, in order to be adjudged sufficient, distinctly state and charge the existence of those three several facts, and that the act complained of took place within the limits of the Southern district of New York; and nothing more need be charged, to constitute a good indictment. The question, then, is—does the indictment, now the subject of investigation, distinctly and explicitly contain those charges?

The indictment charges, in the first count, that on the 24th of December, 1855, a certain legal and judicial process, directed to the marshal of the United States for the Southern district of New York, was duly issued out of, and under the seal of, the dis-

trict court of the United States for said district, against the steamship Northern Light, her tackle, &c., and the arms and ammunition on board of her; and, to show what such process was, it is set out in the indictment, in its words and figures, by which it appears to have been a warrant of attachment issued by the district court against said steamship, &c., upon the filing of a libel by the district attorney, and to have been directed to the marshal of the Southern district of New York, for service. The warrant is in the usual form of all warrants which issue upon the filing of a libel for a forfeiture. It is admitted by the counsel for the defendants, that the warrant is a valid warrant, so far as it respects the action of the marshal, or any persons acting under him, by his authority; and that he and they were not only authorized, but were bound to execute it. But it is contended by the defendants' counsel, that no one is liable, under the act, for any resistance which he may make to the marshal, or to any one acting under him, by his authority, while executing the warrant, unless it appears, by the indictment, that the libel upon which the warrant issued was a good, valid, and sufficient libel; and that the indictment does not show what the averments in the libel were. It is claimed that the district court of the United States has such a limited jurisdiction, that it will not be presumed that the warrant was properly issued, but that it must appear, by the indictment, what particular averments were contained in the libel, before it can be taken (so far as these persons are concerned), that the warrant was regularly issued.

It is not necessary to discuss the question as to how far the district court is a court of limited jurisdiction. I shall not, therefore, go into that question. The necessities of the case do not require it. There is no question that the warrant, so far as it respects the marshal and those acting under him, was legal. It was valid upon the face of it. The marshal to whom it was directed, and those acting under him, were bound to execute it. This was their duty. Nothing would excuse them for the non-performance of this duty. As they were bound to execute it, everybody was bound to yield obedience to it. As everybody was bound to yield obedience to it, no one had a right to resist it, or oppose or obstruct the officer having a right to execute it, in the execution of it. The marshal and his deputies had a right to execute the warrant. The law, in substance, says, that he who knowingly and wilfully obstructs, resists, or opposes any marshal or other officer in serving a warrant which it was his duty to serve, shall be punished. It was the duty of the marshal to serve this warrant, either by himself or by his deputies, and any one who wilfully and knowingly obstructs, resists, or

opposes him in the performance of his duty, acts in violation of law, and is subject to its penalties, even though the libel may not have been sufficient to authorize the issuing of the warrant.

The two remaining questions are—does it appear, by the indictment, that the warrant was placed in the hands of a proper officer for service? and is it charged that the defendants, while it was in the hands of such proper officer for service, wilfully and knowingly obstructed, resisted and opposed such proper officer, in the service of the same? These two questions will be considered together.

It is alleged, in the indictment, that the warrant had the following endorsement upon it, signed by "Abraham T. Hillyer, United States Marshal," to wit: "I hereby depute B. F. Ryer and Luther Horton to execute the within process;" and it is charged that afterwards, at the city of New York, the defendants knowingly and wilfully obstructed, resisted, and opposed Benjamin F. Ryer and Luther Horton, in attempting to execute said warrant, they, the said Ryer and Horton, then and there being officers of the United States, to wit, deputies of the marshal of the United States for the Southern district of New York. It appears, then, by the indictment that the warrant was in the hands of the marshal. He, before the resistance and obstruction took place, made his endorsement upon it. It was directed to him to serve. It was, therefore, in his hands for the purpose for which it was issued, which purpose was to have it placed in his hands for service. Although it is not, in so many words, charged that it was placed in his hands for service, yet the fair intendment of the language of the indictment is, that it was so placed. And the charge is direct, that the defendants knowingly and wilfully obstructed, resisted and opposed Ryer and Horton in the execution of the warrant, they at the time being deputies of the marshal. But it is claimed that, although it may appear, by the indictment, that the warrant was placed in the hands of the marshal for service, and although he may have deputed Ryer and Horton to serve the same, yet they, Ryer and Horton, were not, within the meaning of the act of congress, officers of the United States; that they were the mere agents and servants of the marshal; that any obstruction or resistance to them is not within the prohibition of the law; and that, although an obstruction and resistance to them might, in law, be considered as an obstruction and resistance to the marshal, yet no such obstruction or resistance is charged. The question, then, is—were Ryer and Horton officers of the United States, authorized to serve the warrant? They were deputies of the marshal. It is so charged in the indictment. As such deputies, they were authorized to serve the

warrant, without any special appointment. But it is said that, although they may have been authorized to execute the warrant, they were merely agents or servants of the marshal, and were not, within the meaning of the law, officers of the United States. A little consideration of the laws of congress will show that a deputy marshal is an officer of the United States, authorized to serve process; and, if he be such officer, so authorized, resistance to him is prohibited by the act of congress in question. The marshal has power, as there shall be occasion, to appoint one or more deputies, who are removable from office by the judge of the district court or the circuit court sitting in the district, at the pleasure of either. Act Sept. 24, 1789 (1 Stat. 87) § 27. If a deputy marshal can be removed from office, he is an officer before he is so removed, for, he cannot be removed from office unless he is an officer; and, as he has power to serve process, he is an officer of the United States empowered to serve process. Upon the death of the marshal, his deputies continue in office, unless otherwise specially removed, until another marshal is appointed and sworn. Act Sept. 24, 1789 (1 Stat. 87) § 28. Every marshal or his deputy, when removed from office, has power notwithstanding his removal, to execute all such precepts, as are in his hands at the time of such removal. Id. Marshals and their deputies have the same powers, in executing the laws of the United States, that sheriffs and their deputies in the several states have, in executing the laws of the several states. Act Feb. 28, 1795, § 9 (1 Stat. 425). When a witness is material on the trial of a criminal case, a judge is authorized to issue a warrant, directed to the marshal or other officer authorized to execute criminal and civil process, to arrest such witness and carry him before such judge. Act Aug. 8, 1846, § 7 (9 Stat. 74). These several laws show that deputy marshals are officers of the United States, authorized to serve process. There may be persons who, in certain cases, are authorized to serve process, who may not be officers of the United States. In certain cases a private individual may serve process—as, when a marshal or his deputy is a party. In such cases, writs and precepts are to be directed to such indifferent persons as the court, or any justice or judge, may appoint. Act Sept. 24, 1789, § 28 (1 Stat. 87). This last provision also shows that congress deemed deputies of the marshal to be officers of the United States. Ryer and Horton, therefore, being, as charged in the indictment, deputies of the marshal, were officers of the United States, authorized to serve process, within the meaning of the act of congress in question.

The result is, that the facts necessary to constitute the offence created by the act of congress in question. are sufficiently charged in the indictment The motion to quash must, therefore, be disallowed.