## THE STATE v. BRANDT.

I.—Per MILLER, CH. J., COLE and DAY, JJ., CONCURRING.

1. **Criminal Law**: SELECTION OF GRAND JURY. An indictment will be set aside for irregularities in the selection of the grand jury, only when there has been a departure from the requirements of the statute, affecting the substantial rights of the defendant.

2. ———: ———. Where the proper number to serve upon the grand jury had been returned from all the election precincts save one, and the county canvassers failed to supply the omission, but certain members of the Board of Supervisors suggested to the Auditor two names from the delinquent township to supply the deficiency, it was held not to be such an irregularity as would render the grand jury an illegal body.

3. ———: ———: POWER OF DEPUTY. Where an officer is required by statute to perform any specific duty in conjunction with or in the place of any other officer, such duty cannot be discharged by his deputy.

4. ———: ———: RULE APPLIED. Where the comparison of the ballots with the lists of grand jurors was made by the clerk and the deputy sheriff, in the absence of the sheriff, the grand jury thus selected was held not to be a legal body, and to be incapable of finding a valid indictment. Following *Dutell v. The State*, 3 G. Greene, 125.

5. ———: FOREMAN OF GRAND JURY. The court may appoint a talesman, properly selected from the bystanders, for foreman of the grand jury.

6. ———: WHO IS AN OFFICER. The deputy State Treasurer is an officer within the meaning of Sec. 4243 of the Revision, and may be indicted thereunder for embezzlement.

7. ———: EMBEZZLEMENT: INDICTMENT. An indictment for the embezzlement of public money, under Sec. 4243 of the Revision, should allege that the money charged to have been loaned is also unaccounted for. To constitute the offense, it must have been both misapplied and lost to the State.

II.—Per COLE, J., MILLER, CH. J., and DAY, J., CONCURRING.

8. ———: ———: WHAT CONSTITUTES. The crime of embezzlement, defined in section 4243 of the Revision, consists only in the converting, using or loaning of *so much* of the public money entrusted for safe keeping to the person charged as is taken and unaccounted for.

9. **Constitutional Law**: CONSTRUCTION OF STATUTES. When necessary to harmonize the provisions of a statute or give effect to all of its provisions, the word "or" may be read as "and" and conversely.

10. **Appeal**: FINAL JUDGMENT UNNECESSARY. Wherever the decision of a motion or demurrer involves the merits of the case or the legality of the proceedings, an appeal may be taken therefrom before final judgment is rendered.

| 41 | 593 |
| 79 | 371 |
| 41 | 593 |
| 80 | 171 |
| 41 | 593 |
| 81 | 590 |
| 41 | 593 |
| 88 | 105 |
| 41 | 593 |
| 90 | 510 |
| 90 | 572 |
| 41 | 593 |
| 96 | 447 |
| 100 | 65 |
| 41 | 593 |
| d109 | 133 |
| 41 | 593 |
| 121 | 25 |
| 41 | 593 |
| 130 | 377 |
| 41 | 593 |
| 134 | 590 |
| 41 | 593 |
| 136 | 605 |
| 41 | 593 |
| 140 | 661 |
| 140 | 666 |
| 141 | 301 |
| 141 | 302 |
| 41 | 602 |
| 141 | 299 |
| 41 | 593 |
| f144 | 376 |

### III.—Per MILLER, CH. J., COLE, J., CONCURRING.

11. ———: INDICTMENT. Where a statute defining an offense describes it in terms which constitute simply a legal conclusion, it is not sufficient to charge the offense in the indictment in the language of the statute. The facts constituting the alleged crime must be pleaded.

12. ———: ———: LEGAL CONCLUSION. An indictment charging the "loaning of public money without authority of law," is bad as stating a mere legal conclusion.

13. ———: EMBEZZLEMENT: INDICTMENT. The name of the person to whom public money is charged to have been unlawfully loaned should be set out in the indictment.

14. ———: ———: ———. An indictment charging simply the "unlawful conversion of public money" is insufficient; the facts constituting the conversion should be stated.

### IV.—Per BECK, J., DISSENTING.

15. ———: SELECTION OF GRAND JURY. The provisions of the law respecting the selection and drawing of grand jurors are directory, and a failure to comply with the manner in which the ballots and lists are required to be compared will not deprive the grand jury of jurisdiction. Following *The State v. Carney*, 20 Iowa, 82.

16. ———: ———. The doctrines of the case of *Dutell v. The State* are inconsistent with the principles established in *The State v. Carney, supra,* and *The State v. Ansaleme*, 15 Iowa, 44, and do not constitute a controlling authority.

17. ———: INDICTMENT. An indictment is sufficient if it present such a statement of facts as will enable the court to determine, without the aid of presumptions or intendments, that a crime known to the law is charged therein. DAY, J., *concurring*.

18. ———: ———. In an indictment under section 4243 of the Revision, it is not necessary that the name of the party to whom the money was loaned should be set out. DAY, J., *concurring*.

19. ———: DIRECTORY STATUTE: CONSTRUCTION. Where the particular acts required to be done under a statute are all of the same character, a construction by the court to the effect that a part of such requirements are directory applies equally to all, and the entire statute should be held to be directory.

20. ———: JURY: INFORMALITY. Where the deputy sheriff acted for his principal in the comparison of the ballots and list, and the jury drawn was the identical jury required by law, the persons selected being the same as would have been if the sheriff had acted, the technical informality in the selection of the jury will not affect its jurisdiction or validity. (Code, § 4538).

21. ———: INDICTMENT: WHAT IT MUST ALLEGE. The same reason exists for alleging in the indictment that the money was *taken, converted,, invested, used and loaned,* as that it is unaccounted for. All these conditions are enumerated in the statute and with equal emphasis.

22. **Appeal:** LIES ONLY FROM FINAL JUDGMENT. In section 4522 of the Code, (Rev., § 4906,) which provides that in criminal cases " no appeal can be taken until after judgment," the term judgment means final judgment. It is so used exclusively in the criminal statutes of this State.

### *Appeal from Polk District Court.*

### FRIDAY, DECEMBER 10.

AT the April term, 1874, the grand jury presented to the' District Court then in session in Polk county, the following indictment:

"*District Court of the County of Polk, State of Iowa:*

| . THE STATE OF IOWA | *Indictment for Embezzlement of* |
|---|---|
| *against* | *Public Money.* |
| ISAAC BRANDT. | |

The grand jury of the county of Polk, in the State of Iowa, being legally impaneled, drawn and charged in the name and by the authority of the State of Iowa, accuse Isaac Brandt of the crime of embezzlement of public money, committed as follows:

The said Isaac Brandt, on the 30th day of June, A. D, 1871, in the county of Polk aforesaid, he, the said Isaac Brandt, then and there being an officer within said State, to-wit Deputy Treasurer of State of the State of Iowa, and as such Deputy Treasurer charged with the collection, safe keeping, transfer and disbursement of the public money of said State, and then and there having in his charge as such Deputy Treasurer of State for safe keeping, transfer and disbursement the sum of three hundred thousand dollars of the public money of said State, did then and there unlawfully and feloniously loan without the authority of law the sum of two hundred and twenty-nine thousand six hundred and ninety dollars and forty cents of the said public money of said State in his, the said Isaac Brandt's, charge as such Deputy Treasurer of State, for safe keeping,

transfer and disbursement as aforesaid, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Iowa.

And the grand jury aforesaid, impaneled, sworn and charged as aforesaid, in the name and by the authority of the State of Iowa accuse Isaac Brandt of the crime of embezzlement, committed as follows:

The said Isaac Brandt, on the 30th day of June, A. D. 1871, in the county of Polk aforesaid, he, the said Isaac Brandt, then and there being an officer within said State, to-wit: Deputy Treasurer of State of the State of Iowa, and as such Deputy Treasurer of State charged with the collection, safe keeping, transfer and disbursement of the public money of said State, and then and there having in his charge as such Deputy Treasurer of State, for safe keeping, transfer and disbursement the sum of $234,690 of the public money of said State, did then and there unlawfully and feloniously convert the sum of five thousand dollars of said money of said State in his, the said Isaac Brandt's, charge as such Deputy Treasurer of State as aforesaid, to his, the said Isaac Brandt's, own use contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Iowa.

JOSIAH GIVEN, <em>District Attorney.</em>"

The defendant moved to set aside this indictment for the following reasons:

1. The grand jury that returned such indictment was not selected, drawn or summoned as provided by law.

2. The foreman of the grand jury was not slected from the regular panel, but from the talesmen.

3. The names of the witnesses examined by the grand jury touching the charge preferred against the defendant herein are not designated on such indictment, nor are the minutes of their evidence set out and returned with the indictment, as the law requires.

4. There was misconduct on the part of the sheriff in filling up the grand jury, as well as misconduct on the part of the jury after the same was impaneled.

After hearing evidence touching the matters stated in the motion, the court overruled the same, and thereupon defendant demurred to the indictment, which being also overruled, the defendant appealed.

*Polk & Goode*, for appellant.

The grand jury were not selected, drawn or summoned as provided by law. (Code, Secs. 234–6–7–8, 240; 30 Md., 173; 12 Barb., 220–1; 58 Barb., 436–7; Code, Secs. 301, 629.) The deputy sheriff is prohibited from acting for his principal in comparing the ballots with the jury lists. (Code, Secs. 240, 767; *Dutell v. The State*, 4 G. Greene, 125.) The court cannot order the panel to be filled by the sheriff from the bystanders. (Code, Sec. 244.) A talesman is not eligible for foreman. (Code, Sec. 4367; *Keitler v. The State*, 4 G. Greene, 291.)

The Deputy State Treasurer is not the officer *charged* with the collection of public money, and is not, therefore, indictable for embezzlement. He is not an officer within the meaning of the statute. (Rev., Sec. 660; 3 Kent, 572; *U. S. v. Tinklepaugh*, 3 Blatch.; Art. 12, Sec. 11, Const. of Iowa, Art. 11, Sec. 5 Id.; 3 Wall, 93; 6 Id., 385.) The deputy is in no privity of relation with the State. If he embezzles from his principal, he is guilty of larceny. (Code, Sec. 4244; 3 Bibb., 494; 4 Dana, 174; Id., 390; 5 Johns., 173; 7 Id., 35; 12 Iowa, 346; 22 Id., 309.) The principal shall answer for the deputy. (Earl of Shrewsbury's case, 9 Coke, 42; 3 Kent, 572.) Who are State officers. (Rev., Sec. 660.) How they may resign. (Rev., Sec. 663.) All holding by appointment shall resign to the officer appointing them. All offices must be established by law. (Const. of Iowa, Art. 4, Sec. 22; Id., Art. 11, Sec. 5; 3 Wall., 93; 6 Wall., 385.) The crime of embezzlement cannot exist without the existence of the trust relation between the party charged and the party from whom he is alleged to have embezzled. (2 Bish. C. L., Secs. 330, 345; 2 Wharton C. L., Sec. 1929; 6 Cox C. L., 363.)

The indictment is fatally defective in that it has not charged that any public money was received and unaccounted

for. (Rev., Secs. 4243, 797, 806, 807.) "Or" should be con-
strued to mean "and" in Sec. 4243 of the Revision. (Bish.
Stat. Crimes, Sec. 243).

A new law establishing a different remedy or penalty repeals
the old. Section 4243 is repealed by Chap. 45 of the Revis-
ion. (Bish. Stat. Crimes, Secs. 168, 171, 174.) The general
is controlled by the particular intention. (Bish. St. Cr., Sec.
54; 18 Md., 484; 18 B. Mon., 262.)

. *M. E. Cutts, Att'y Gen.*, for the State.

The provisions of the law in relation to the mode of obtain-
ing jurors are directory, not mandatory; a substantial compli-
ance is sufficient. (*The State v. Carney*, 20 Iowa, 82; *The
State v. Knight*, 19 Id., 94; *The State v. Adams*, 20 Id., 486;
*Friery v. The People*, 2 Keyes, 424; *Ferris v. The People*,
35 N. Y., 125.) It is the duty of the sheriff to assist the clerk
in comparing the ballots with the jury lists, and make correc-
tion when necessary. In the case at bar no corrections were
made. There was no error in appointing a foreman from
those summoned from the bystanders, since all upon the jury
are *summoned*. (Rev., Secs, 4256–7, 4267.) When a statute
directs a thing to be done in a certain way, or at a certain time,
and the form or period is not essential, proceedings under it will
be valid though the terms of the statute are not strictly com-
plied with. (Potter's Dwarris, 226, note; *The State v. McLean*,
9 Wis., 292; *The People v. Cook*, 14 Barb., 259; *Pond v.
Negus*, 3 Mass., 230; *The People v. Allen*, 6 Wend., 486;
*Colt v. Eves*, 12 Conn., 243; *Shaw v. Orr*, 30 Iowa, 355.)
Defendant cannot avail himself of an error in overruling the
motion to set aside the indictment, unless his substantial
rights were affected thereby. (Code, Sec. 4538; *The State v.
Carney, supra; The State v. Wood*, 17 Iowa, 18; *The State v.
Guisenhaus*, 20 Id., 227; *The State v. Sanders*, 30 Id., 582;
*Hench v. The People*, 16 Mich., 46.) The defendant was an
"officer within the State" and indictable under Sec. 4243 of
the Revision. His appointment must be in writing and
approved by the Governor. (Rev., Sec. 642.) He must take
the same oath as his principal. (Sec. 64.) In the principal's

absence or disability, the deputy must perform his duties. (Sec. 643.) The Deputy State Treasurer is a public officer. (Burrill's Law Dic., 257; *U. S. v. Heartwell*, 6 Wall., 393; *Vaughn v. English*, 8 Cal., 39.) It is not necessary that an indictment for embezzlement of public money should contain the name of the party to whom the money was loaned, or that it should set out the *manner* in which the act was committed. It is sufficient if it charge it in ordinary, intelligible language. (*State v. Baughman*, 20 Iowa, 496; *State v. Freeman*, 27 Id., 333; *State v. Becker*, 20 Id., 338; *People v. Adams*, 17 Wend., 475; *Osgood v. People*, 13 N. Y., 449; *Com. v. Lampton*, 1 Bibb., 261; *Montee v. Com.*, 3 J. J. Marsh, 132; *Romp v. State*, 3 G. Greene, 276; *U. S. v. Lancaster*, 2 McLean, 432; *U. S. v. Patterson*, 6 McLean, 466; *Zumhoff v. State*, 4 G. Greene, 526; *State v. Thompson*, 19 Iowa, 300; *State v. Cunningham*, 21 Id., 432; *Com. v. Concannon*, 5 Allen, 502; *Com. v. Butterick*, 100 Mass., 1; *People v. McKinney*, 10 Mich., 54; *Johnson v. Commonwealth*, 5 Bush., 450; *State v. Orwig*, 24 Iowa, 103; *State v. Bryan*, 40 Iowa, 379; 2 Bish. Crim. Proc., 295; 3 Chitty Criminal Law, 962.) The indictment is not defective because it fails to charge that the money alleged to be embezzled is unaccounted for. The criminality of the act consists in using the public money for individual purposes. Sections 797, 806 and 807 are expressly limited in their application to the state treasurer, and can have no application to the present case.

The fundamental rule for the construction of statutes is, to ascertain the intention of the legislature and then, if the language will permit, to so construe the statute as to carry out that intention. (Sedg. Stat. and Const. Law, 194, 195; Pot. Dwarris, 175–180; *Bosely v. Mattingley*, 14 B. Mon., 89; *Fisher v. Blight*, 2 Cranch, 358, 399.)

The statutes (Secs., 4243 and 808,) are not to be construed as one act. They are as distinct as they were before the Revision. (37 Iowa, 402.) A repeal by implication occasioned by the enactment of a subsequent inconsistent statute only extends so far as the statutes are inconsistent. (Sedg. Stat. and Const. Law, 97–107; *Elwell v. Gilliland*, 27 Geo., 467;

*People v. Durich*, 20 Cal., 94; *Van Renselaer v. Snyder*, 9 Barb., 308; Bish. on Stat. Crimes, 166; *Wood v. U. S.*, 16 Peters, 342.) There is no rule of law which authorizes a court to change the language or meaning of a statute to avoid a repeal by implication. (Bish. on Stat. Crimes, 243; *State v. Myers*, 10 Iowa, 448.) Repeals by implication are not favored. (*Casey v. Harned*, 5 Iowa, 1; *Williams v. Potter*, 2 Barb., 36; *McCool v. Smith*, 1 Black. (U. S.,) 459.)

No appeal can be taken until after judgment is rendered. (Code, Sec. 4522; *State v. Fleming*, 13 Iowa, 442.)

MILLER, CH. J.—The appellant's counsel assign as error the overruling of their motion to set aside the indictment.

It is provided in section 4337 of the Code, that the motion to set aside the indictment can be made on the ground, among others, "that the grand jury were not selected, drawn, summoned, impaneled or sworn as prescribed by law," and that the motion "must be sustained." The statute, (Code, section 4538,) also provides that this court, on appeal, must examine the record, and without regard to *technical errors or defects, which do not affect the substantial rights of the parties*, render such judgment as the law demands."

If, therefore, there has been no substantial departure from the requirements of the law in the selection, drawing, etc., of the grand jury, affecting the substantial rights of the defendant, the motion to set aside the indictment ought not to be sustained, or in other words this court should give judgment without regard to mere technical errors or defects in this respect. On the other hand, if the errors or defects are of such a character as to affect the substantial rights of the defendant, the motion "must be sustained." See *The State v. Carney*, 20 Iowa, 82; *The State v. Ansaleme*, 15 Iowa, 44.

1. CRIMINAL law: selection of grand jury.

The statute provides that a jury list of seventy-five persons to serve as grand jurors shall annually be made in each county, from which to select for the year, commencing on the first day of January. Code, section 234. The auditor of the county is required, on or before the first Monday of September in each

year, to apportion the number to be selected from each election precinct, as nearly as practicable in proportion to the number of votes polled therein at the last general election, and deliver a statement thereof to the sheriff, who must deliver a written notice to one of the judges of election in each precinct, of the number of jurors to be returned therefrom. Code, sections 236, 237. The judges of election are required to make selections of jurors as stated in the notices respectively, and return lists of the names selected to the auditor with the returns of the election, and, in case the judges fail to make and return lists as required, the county canvassers at their meeting to canvass the votes polled in the county must make lists for the delinquent precincts, and the lists are to be filed in the county auditor's office. Code, Sec. 238.

Grand jurors are to be selected for the first term in the year at which jurors are required, commencing next after the first day of January in each year, and serve for one year. Code, Sec. 239. "At least twenty days prior to the first day of any term at which a jury is to be selected, the auditor, or his deputy, must write out the names on the lists aforesaid which have not been previously drawn as jurors during the year, on separate ballots, and the clerk of the District Court, or his deputy, and the sheriff having compared said ballots with the lists, and corrected the same if necessary, shall place the ballots in a box provided for that purpose." Code, Sec. 240. The next section provides that after thoroughly mixing the ballots thus placed in the box, the clerk or his deputy shall draw therefrom the requisite number of jurors to serve in the capacity of grand or petit jurors as the case may be. The clerk then issues a precept to the sheriff who is required to summon the jurors to appear, etc. Code, Secs. 241, 242.

These provisions of the statute point out the manner of selecting and drawing the grand jurors.

I. The grand jury which found the indictment in this case were drawn to serve for the year 1874. The proper number had been selected and returned by the judges of election in all of the election precincts of the county except one. From Franklin township no names were

2. —— : ——.

returned as grand jurors. The county canvassers also neglected to make any list for this township at their meeting to canvass the votes, but two of the members of the Board of Supervisors in December, 1873, then in session for a special purpose, supplied two names from the delinquent township, none of which, however, were drawn on the grand jury that found the indictment in this case. That the list of grand jurors to the number of seventy-three persons were regularly selected and returned as prescribed by the statute, there is no doubt. Does the irregularity in the selection of the two grand jurors from Franklin township so affect the substantial rights of the defendant, as that the grand jury should be held to be an illegal body? We think this question must be answered in the negative upon the authority of *The State v. Carney*, and others, *supra*. Two of the indictments in that case were found by a grand jury selected from the list of seventy-three instead of seventy names, and it was held to be a substantial compliance with the statute.

II. It will be seen by reference to section 240 of the Code, above set out, that certain specific duties are enjoined upon the officers there named, in connection with the selection of jurors. It is made the duty of the *auditor or his deputy*, to write out the names of the jurors found on the lists as returned by the judges of election, on *separate ballots*. The *clerk or his deputy*, in conjunction with the sheriff, is required to *compare the ballots with the lists* and *correct the same if necessary*. The officers here named are empowered to perform the duties specified. The statute nowhere provides that they may be performed by any other officers or persons, or in conjunction with any other. Section 767 of the Code provides that " when any officer is required to act in conjunction with, or in place of another officer, *his deputy cannot supply* his place. It follows, therefore, that the deputy sheriff cannot supply the place of the sheriff, who is required to act with the clerk or his deputy in comparing the ballots with the lists of jurors, and correcting the same if necessary. It was so held in *Dutell v. The State*, 4 G. Greene, 125; and it was further held in that case that a

*3. ——: ——: power of deputy.*

grand jury, where the ballots and lists had been compared and corrected by a deputy sheriff in connection with the county judge, was an illegal body, and not authorized to find an indictment.

In the case before us the deputy sheriff acted in conjunction with the clerk in comparing the ballots with the lists, and in correcting the same. The sheriff was not present

*4. ——: ——: rule applied.* and did not act. The case comes clearly within the case last cited. The defect here appearing is not a mere technical one, not affecting the substantial rights of the defendant. It is not a mere irregularity, but the objection goes to the jurisdiction of the officers to do the act. The deputy sheriff had no more authority to act in the premises than any private individual, and the duty, being one to be performed by two officers, cannot be performed by one only, nor by one authorized officer and a private person or unauthorized officer.

The comparing of the ballots with the lists is an important and material act. This duty is required so that mistakes shall not occur in writing the ballots by writing names thereon that are not contained on the lists. It is required in order that the same persons, and none other, shall be drawn who have been returned as jurors by the judges of election. This is the method adopted by the law for the purpose of selecting grand jurors from the body of the county, good and true, for the purpose of inquiring into offenses committed or triable within the county. It is not only essential that these acts be performed, but it is also essential that they be done by the officers appointed by the law to perform them. If the trial of the cause should be had before some person not authorized to act as judge, a conviction, although obtained in strict accord with all the forms and rules of the law in every other respect, would be void. *Michales v. Hine*, 3 G. Greene, 470; *Winchester v. Ayres*, 4 Id., 104; *Smith v. Frisbie*, 7 Iowa, 486; *Petty v. Duval*, 4 G. Greene, 120; *Wright v. Boon*, 2 Id., 458; *Smith v. Grimwood*, June term, 1859, unreported, Ham. Digest, 532; and it would not do to say that there was no prejudice to the substantial rights of the defendant, where thus tried and convicted by an unauthorized tribunal. So, in this case, the

defendant is prejudiced in his substantial rights in that the duty of comparing the ballots with the lists of grand jurors, and correcting the same, was not performed by the persons who alone under the law are empowered to discharge that duty. The abstract in this case shows that various corrections in the lists were made by the auditor and deputy sheriff.

The defendant is entitled to be indicted and tried in substantial compliance with the law, and by the officers appointed by the law, and when he has been indicted or tried by others than those selected by law he is prejudiced in his substantial rights. So, too, if any material step in the proceedings be performed by a person having no authority to do so. The language of the statute is that when "the grand jury have not been selected, drawn, summoned, impaneled or sworn as prescribed by the law," "a motion to set aside the indictment" may be made and "must be sustained." Where the duties prescribed are performed by the officers or persons authorized and appointed by the law, immaterial departures from the *manner* of doing acts specified, which do not prejudice the substantial rights of a defendant accused of a public offense, will not afford grounds for setting aside an indictment, the statute being in this respect directory. *State v. Carney, supra.* But when the acts required by law to be performed by certain officers are not so done by them, but by unauthorized persons, it is as if not done at all; it is of the essence of the act that it be performed by the officers or persons designated by law.

The case of *Dutell v. The State, supra,* involved the precise point under consideration; there the deputy sheriff acted in conjunction with the county judge in comparing the ballots with the lists of grand jurors; here the deputy sheriff acted with the clerk; in neither case had the deputy sheriff any authority to act.

The indictment was held to have been found by an unauthorized body because the deputy and not the sheriff thus acted. This defect or irregularity in the election of the grand jury is fatal, because the statute so declares; and it also expressly provides that such defect may be attacked by a

motion to set aside the indictment. In this respect, the election or selection of grand jurors is different from that of justices of the peace or other officers, for as to them the statutes provide another mode for contesting their election, and until such contest their acts duly performed are binding; whereas the time and manner of contesting the election of grand jurors is *after* they have acted, and by motion to set aside the indictment found by them, as was done in this case.

III. Before the organization of the grand jury, twelve only of the regular panel answered to their names when called, four were excused, and the panel was filled from the by-standers by the sheriff, under the direction of the court; whereupon the court appointed J. B. Miller—a talesman—as foreman of the grand jury. It is insisted that this was erroneous and rendered the grand jury an illegal body.

The statute provides that "from the persons summoned to serve as grand jurors the court must appoint a foreman; the court must also appoint a foreman when the person already appointed is discharged, excused, or from any cause becomes unable to act before the grand jury is finally discharged." Code, Sec. 4267. It is "from the persons summoned to act as grand jurors" that the foreman is to be selected. The regularly drawn grand jurors are required to be "*summoned*" by the sheriff, upon a precept issued by the clerk. Code, Secs. 241, 242. When, from any cause, the persons thus summoned fail to appear, or when, from any cause, the court shall decide that they have been illegally elected, etc., and shall set aside the precept, the court must cause another precept to be issued to the sheriff "commanding him to *summon* a sufficient number of persons from the body of the county to serve, etc. Code, Sec. 244. "Persons *summoned* by the sheriff to supply a deficiency in the requisite numbers of grand jurors serve only for the term at which they are summoned." Code, Sec. 4257.

From these provisions of the statute it is plain that it was not the intention of the legislature to restrict the court, in the appointment of a foreman, to those jurors *summoned* as

regularly drawn grand jurors to serve for a year, for the statute uses the word "summoned" in respect to all the persons required to serve as grand jurors, whether as regular drawn jurors or as talesmen.

The motion to set aside the indictment should have been sustained for the reason that the deputy sheriff and not the sheriff acted in conjunction with the clerk in comparing the ballots with the jury lists returned by the judges of election, and in correcting the same. In all other respects the law was substantially complied with.

IV. Appellant's counsel insist that the court erred in overruling their demurrer to the indictment. It is claimed

6. ——: who that the facts charged do not constitute the crime
is an officer. of embezzlement. The statute under which the
indictment is drawn is as follows: "If any officer within this State charged with the collection, safe keeping, transfer, or disbursement of public money, unlawfully convert to his own use in any way whatever, or use by way of investment in any kind of property, or loan, without the authority of law, any portion of the public money intrusted to him for collection, safe keeping, transfer, or disbursement, every such act is an embezzlement of so much of said money as is thus taken, converted, invested, used, loaned or unaccounted for, and upon conviction thereof he shall be imprisoned in the penitentiary not exceeding five years, and fined in a sum equal to the amount of money embezzled," etc. Revision, Sec. 4243. It is first claimed that the deputy state treasurer is not an "officer" within the meaning of this section of the statute. In this we cannot concur. The statute authorizes the state treasurer to appoint a deputy, for whose acts he is responsible, and from whom he must require a bond. The appointment must be in writing and approved by the governor, and the appointment must be filed and kept in the office of the secretary of state. Revision, sections 560, 642.

The deputy must take the same oath as his principal, which must be indorsed upon and filed with the certificate of his appointment. Revision, Sec. 647. Every civil officer who is required to give bond must take and subscribe "an oath that

The State v. Brandt.

he will support the constitution of the United States and that of the State of Iowa, and that to the best of his knowledge and ability he will perform all the duties of his office (naming it), as provided by the condition of his bond." Revision, Sec. 561. From these various provisions of. the statute it is evident that the deputy state treasurer is to be deemed and is an officer. He is required to give an official bond and to take the same oath of office as his principal, in which oath his *office* is *named*.

In support of this view, see *U. S. v. Hartwell*, 6 Wall., 385; *Bamford v. Melvin*, 7 Maine, 5; *Vaughn v. English*, 8 Cal., 39; *U. S. v. Ticklepaugh*, 3 Blatchf., 425; *Bradford v. Justices*, 33 Geo., 336. See also, Revision, §§ 4284, 4288, 4289, 4290, 4293, 4297, 4298.

V. It is next argued (and this point was much elaborated in the oral argument,) that the first count in the indictment is insufficient in that it is too general. It charges that the defendant did "unlawfully and feloniously loan, without authority of law, the sum of two hundred and twenty-nine thousand six hundred and ninety dollars and forty cents" of the public money of the State, which was in his charge for safe keeping, etc. The specific objections urged to this charge are that it does not state to whom the money was loaned, or whether it was all loaned to one person or separate sums loaned to different persons, making in the aggregate the sum named in this count of the indictment.

Our statute prescribes that an indictment must contain a statement of the *facts* constituting the offense, in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." Code, Sec. 4296, sub-division 2. "The indictment must be direct and certain as regards:

"1. * * * * .

"2. * * * * .

"3. The particular circumstances of the offense charged, when they are necessary to constitute a complete offense." Code, Sec. 4298.

It is generally sufficient to charge an offense, created and

defined by statute, in the language of the statute. *The State v. Shaw*, 35 Iowa, 575, and cases cited. But when a statute describes an offense by terms constituting rather a legal conclusion than a statement of the facts constituting it, the indictment must specifically describe the offense by a statement of the facts. Thus, in Virginia, under a statute which constituted *attempts* to commit certain offenses misdemeanors, it was held not sufficient to allege an "attempt to maim," in the language of the statute; the particulars of the *attempt* were required to be set forth. Clark's Case, 6 Grattan, 675. And in *Commonwealth v. Gillespie*, 7 Serg. & Rawle, 469, an indictment charging the defendant with selling lottery tickets in a lottery not authorized by law, was held bad because not sufficiently certain.

Under a statute in Pennsylvania declaring "fraud" in election officers indictable, it was held necessary to allege the facts constituting the fraud. *Commonwealth v. Miller*, 2 Pa., 481. So, in *The United States v. Almeida*, in the District Court of the United States for Pennsylvania, cited in Wharton's Precedents, note *a* to form 1061, under a statute declaring it an offense to "make a revolt," an indictment charging merely, in the language of the statute, that the defendant "made a revolt," was held bad, because it failed to charge the facts constituting the offense. The ingredients composing the offense should have been alleged, for this was necessary, also, in order to so distinguish and define the crime as that a conviction or acquittal could be pleaded in bar of a subsequent indictment for the same offense.

In *The United States v. Ross*, Morris R. (Iowa), 164, it was held, that an indictment for obtaining money under false pretenses must particularly set forth the false pretenses, in order that the defendant might be apprized of the accusation against him, so as to enable him to prepare his defense.

In *The State v. McConkey*, 20 Iowa, 534, it was held, that an indictment for willful trespass in cutting down and carrying away the timber of another, should allege the name of the owner of the land on which the trespass was committed. So, also, in *The State v. Allen*, 32 Iowa, 491, an information

against the defendant, charging him with "selling intoxicating liquors in violation of the laws of the State of Iowa," was held insufficient in not alleging the name of the person to whom the liquor was sold. It was there said that "the offense can only be defined by charging the person accused with selling intoxicating liquors to another person. The person to whom the liquor was sold should be named, if known, and, if not known, that fact should be, stated. This is necessary to constitute the fact of selling and also to enable the defendant, if convicted or acquitted, to plead such conviction or acquittal in bar of a subsequent prosecution for the same offense. In Massachusetts, where they have a statute declaring that a party who embezzles money or property shall be deemed, by so doing, to have committed larceny, it is held not sufficient to charge in the indictment that the defendant did embezzle, steal, take and carry away, etc., but that the facts constituting the embezzlement must be charged. *Commonwealth v. Simpson*, 9 Met., 138; *Same v. King*, 9 Cush., 287.

These cases sustain the principle that the *facts* constituting a public offense must be charged in the indictment, and that, when a statute which creates an offense describes it in general terms constituting a legal conclusion, the indictment must specifically describe the offense so as to bring it within the legal conclusion; and this, too, is the effect of the provisions of our Code, before cited.

The general language of the statute making it an indictable offense to "loan the public money without authority of law," 12. ——: ——: is more a statement of a legal conclusion than one legal conclu- sion. of facts constituting an offense. The particular facts going to make up the offense, and bringing it within the legal conclusion of the words of the statute, are not stated in the indictment. To charge that the defendant loaned the public money in his charge for safe keeping, etc., without authority of law, fails to comply with. the provisions of the Code above referred to. It is not a statement of the facts constituting the offense. It is not "certain as to the particular facts or circumstances of the charge" which are necessary to constitute a complete offense. To loan is to let a thing to

another, either gratuitously or for a reward. In order to constitute a loan there must be a thing loaned, in this case the public money, a lender and a *borrower*, as well as a contract between the parties. These are the *facts* which are necessary to constitute a loan of the public money, and they should all be stated in the indictment. The name of the person to whom the money was loaned is as essential to be stated as that of the person making the loan. To charge the defendant in general terms with loaning the money of the State, is just as much a legal conclusion as to charge a defendant with selling 13. ——: em- intoxicating liquor in violation of the statute; and bezzlement: indictment. if, to constitute a good indictment or information for selling liquor, as was held in the *State v. Allen, supra,* it is necessary to charge the name of the person to whom the sale was made, it must also be necessary, in order to constitute a good indictment for loaning the public money, to charge the name of the person to whom the loan was made. The cases are perfectly analagous; for, if to constitute an unlawful sale of liquor it requires the name of the seller, the liquor sold and the name of the person to whom sold, it must be necessary, in order to charge an unlawful loaning, to name the lender, the money loaned, and the name of the person to whom loaned. These several facts are necessary in either case to constitute the unlawful act intended to be charged as a public offense.

Again, if the mere loaning of any portion of the public money without authority of law, by the officer, although no loss occur to the State therefrom, be an offense within this section of the statute, then each loan made constituted a distinct offense; hence, it is necessary to allege the name of the person or persons to whom the money was loaned. For aught that is alleged in the first count of the indictment, the whole sum of money charged to have been unlawfully loaned may have been loaned to one person or to one hundred different persons. It merely alleges, in general language, the loaning of that amount of money unlawfully. Now if it were loaned to different persons, each loan would constitute a separate offense, and they could not be joined in the same indictment. Code, Sec. 4300. If the general charge of loaning, as stated

in the indictment, were sufficient, then this provision of the statute can be evaded by such general mode of alleging the loaning of the public money, although it may have been made in several distinct loans, and for that reason constitute several distinct offenses.. In order, therefore, to comply with the statute requiring an indictment to charge but one offense, and that the 'charge be direct and certain as to the particular circumstances necessary to constitute a complete offense, the name of each person to whom the public money was loaned, if known, should be alleged, for without this a " complete offense " is not charged.

" The law," in the language of Judge Hane, in *The U. S. v. Almeida, supra*, "secures to every man who is brought to trial on a charge of crime, that the acts which constitute his alleged guilt shall be set forth with reasonable certainty in the indictment he is called upon to plead to. This is his personal right, indispensable to enable him to traverse the facts, if he believe them to be untruly charged; to deny their asserted legal bearing, if in his judgment they do not establish the crime imputed to him; or to admit at once the facts and the conclusion from them, if he be conscious of guilt. It is important to his protection also, in case he should be a second time charged for the same offense, that there should be no uncertainty as to that for which he was tried before. And besides all this, which may be supposed to regard the accused alone, it is necessary for the proper action and justification of the court, that it shall clearly appear from facts patent on the record, that a specific, legally defined crime has been committed, for which sentence is to be awarded according to the laws that apply to it."

VI.  The second count of the indictment charges the defendant with converting the sum of five thousand dollars of the public money to his own use, without stating how or in what manner the money was converted. The statute provides, that "if any officer within this State charged with the collection, safe-keeping, transfer, or disbursement of public money, unlawfully convert to his own use, *in any way whatever*," etc., he shall be imprisoned, etc.  What we have

said in the last paragraph of this opinion, in respect to the first count, will apply to this count also. To charge that defendant converted to his own use public money is charging a legal conclusion rather than a fact. The manner in which the money was converted should be alleged, so that the court may determine whether in legal contemplation there has been an unlawful conversion of the public money or not. To charge that one committed "murder," or "robbery," or "larceny," would be bad. The *facts* constituting the crime must be stated. So to charge an "unlawful conversion" of the public moneys is bad, because it is not a statement of the facts composing the offense intended to be charged.

VII. It is next urged that the indictment fails to charge the crime of embezzlement, for that it does not charge that any of the public money, with the safe-keeping of which the defendant was charged, has been lost to the State or unaccounted for. It is insisted that in order to constitute the crime intended to be charged, the public money must not only be unlawfully converted or loaned, but that there must be a failure on the part of the officer to account therefor. It is urged that sections 796, 797, 806, and 807, of the Revision, provide for the punishment of the officer in cases of the unlawful use of the public money where there is no loss or failure to account, the offense being a misdemeanor under these sections; whereas, under section 4243, the crime of embezzlement there defined, being a felony, is not complete by a mere unlawful use or loaning of the public money, where the entire amount of the funds are accounted for, or paid over, which is what is meant by accounting for as here used. In order that the reader may better understand this point and our ruling upon it, we here copy the sections of the Revision above referred to, except section 4243, which has already been set out herein.

"Sec. 796, (86.)   If the State Treasurer or County Treasurer discount auditor's warrants at less than the amount due thereon, either directly or indirectly, or through third persons, they shall be liable to a fine not exceeding one thousand dollars for the benefit of common schools, to be prosecuted as other

fines, and the payee of the warrant may be a witness on the trial."

" 797, (87.) County Treasurers shall be liable to a like fine for loaning out, or in any manner using for private purposes, State or county funds in their hands, and the State Treasurer shall be liable to a fine of not more than ten thousand dollars for a like misdemeanor, to be prosecuted by the attorney general in the name of the State, for the benefit of common schools."

" Sec. 806, (96.) The Treasurer of the State shall keep in the safe in his office all moneys received by him as such treasurer, until the same are withdrawn therefrom on warrants issued by the Auditor of State in accordance with law. The treasurer shall not deposit any of the moneys received by him as treasurer with, or lend any portion thereof to any person or persons, or association of persons whatever, or to any company incorporated or unincorporated, nor shall he in any manner whatever allow said moneys or any part thereof, to be withdrawn from said safe or used in any manner whatever, otherwise than may be provided by law."

" 807, (97.) Should the Treasurer of State at any time violate any of the provisions of section ninety-six of this act," (the last section,) "he shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not less than five thousand dollars, nor more than twenty thousand dollars, and imprisoned in the county jail not less than one year nor more than five years, or both at the discretion of the court."

Section 4243, under which the indictment is drawn, was enacted in 1851, and was section 2618 of the Code of that year; the other four sections above set out were first enacted in 1860, and are a part of chapter 164 of the laws of that year, which chapter expressly repeals all acts or parts of acts in conflict with it.

It will be observed that these sections taken from the laws of 1860 declare the acts of taking, depositing, using or loaning the public moneys to be a misdemeanor, punishable by fine and imprisonment in the county jail, while the same acts are,

by section 4243, declared to be embezzlement, and punishable by a different fine, and by imprisonment in the penitentiary. If these provisions of the statute do not define different offenses, and the law of 1860 was last enacted, the rule is well settled that the new statute which provides a milder punishment, repeals so much of the former law as concerns the punishment, and this, without any express repeal.  And further than this, where one statute prescribes different degrees of punishment, in different sections, *only* the milder degree can be adjudged.   Bishop on Stat. Crimes, section 168, and the numerous cases cited in the notes.   Hence, if all the sections herein quoted shall be regarded as a part of the same statute, enacted at the same time by their adoption into the Revision of 1860, then the milder penalty of fine and imprisonment in the county jail would operate as a repeal of the punishment prescribed in section 4243.   If the several sections are all read precisely as they are printed in the Revision, the conclusion is inevitable that they define substantially one and the same offense, and a repeal by implication would follow.   But the rule that repeals by implication are not favored, and that any reasonable or allowable construction will be adopted to avoid such result, has been frequently announced by this court. See *Casey v. Harmand, County Judge,* 5 Iowa, 1; *Robertson v. Young,* 10 Id., 291; *Thatcher v. Haun,* 12 Id., 303; *Baker & Griffith v. The Steamboat Milwaukee,* 14 Id., 214; *Allen v. Pegram,* 16 Id., 163; *Burke v. Jeffries,* 20 Id., 145; *City of Dubuque v. Harrison,* 34 Id., 163; *Morrison v. Hershire,* 32 Id., 271; *Prisdon v. Shank,* 37 Id., 82.

By recurring to the language of section 4243, it will be seen that, by changing the word " or " preceding the word " unaccounted for" to the word "and," the nature and consequences of the offense are entirely changed, and the reason for making such an offense a felony, punishable in the penitentiary, while the offense defined in the other sections is only a misdemeanor, becomes very apparent, namely: the offense specified by the four sections is a mere technical violation of the statute without injury or loss to any one, and the only consequence of such violation is the liability to pay the penalty prescribed; this is

the full measure of liability therefor, which may be more or less than the amount of money used or loaned; while the offense punishable under section 4243, when the word " and " is substituted for the word " or," results in a loss or injury to the tax-payers of the county or State to the extent of the money unlawfully used or loaned *and* " unaccounted for;" and for this greater wrong of depriving the county or State of a portion of its funds, and as a stimulus to the officer to account for the money, the severer punishment of imprisonment in the penitentiary, and a fine equal to the amount of money unaccounted for is prescribed. By thus construing " *or* " to mean "*and*," we avoid a repeal by implication of the punishment clause in section 4243, we make the several sections harmonious and consistent, and the punishment graduated according to the heinousness and deleterious consequences to the public of the offense committed.

The only question remaining in this connection is, whether we have any authority in law for construing a disjunctive conjunction as a conjunctive, and *vice versa*. That courts have interpreted the word " and " as a disjunctive; and the word " or " as a conjunctive when the sense absolutely required, and this in extreme cases in criminal statutes, against the accused, is laid down as elemental. Bishop on Statutory Crimes, p. 243, and cases cited in notes 1 and 2; see, also, The Estate of Hallowell in Supreme Court of Penn., April 3, 1875, and found in Legal Int., Phil., of April 9, Vol. 22, No. 15; and this court in *The State v. Meyers*, 10 Iowa, 448, construed the word " or " to mean " and," and this too when such construction operated against the accused. See also, to the same effect, *The State v. Cooster*, 10 Iowa, 453.

The fact that the sections quoted from the law of 1860 only name the county and State treasurer does not affect this construction. For, if this construction has to be resorted to for the purpose of avoiding a repeal by implication or to make the different provisions of the statute consistent with each other, and maintain them entire as respects the office of the State Treasurer, the same construction would have to obtain as respects every other officer, since all the laws must be uniform, and

.whatever would be a correct construction for one officer must be correct for all; for it cannot be held that the acts which, when committed by the State Treasurer, amount to a misdemeanor, would be a felony if committed by his deputy. But the words " State Treasurer," may well be held to include any and every person discharging his duties as such. The law embraces an officer *de facto* as well as one *de jure*. It follows, therefore, that since the indictment does not charge that the money of the State, which was used or loaned by the defendant, was unaccounted for, it does not charge the crime of embezzlement, under section 4243 of the Revision, and for this reason also, the demurrer should have been sustained.

REVERSED.

Cole, J., concurs in the foregoing opinion.

Day, J.—I concur in the foregoing opinion of the Chief Justice, except as to the points determined in the fifth and sixth sub-divisions. As to them, I concur in the conclusions reached in the opinion of Beck, J.

Beck, J., *dissenting.*—I cannot concur in the conclusions .reached upon the questions discussed in the foregoing opinion. I shall proceed, with great brevity, to point out the grounds of my objection to the opinion, and state the reasons supporting my views. The questions are those of no great breadth, and involve the application of elementary principles which are very familiar to the profession.

I.—The grand jury which presented the indictment in this case was duly impaneled and sworn, and discharged the duties prescribed by law to be performed by that body. It is not pretended that the law, in the least particular, was disregarded or disobeyed in the proceedings, after the jury was impaneled, resulting in the indictment of the defendant.

The law is careful that only such persons shall be impaneled upon the grand jury as shall have been legally selected. The manner of the selection is clearly described in the foregoing opinion. Among other things the law directs that certain officers shall compare the ballots,

15.——: selection of grand jury.

used in drawing the jury, with the lists of jurors' names. The sheriff is named as one. In this case the duty assigned to the sheriff was discharged by his deputy. Now it is not pretended that the duty required of this officer was not perfectly performed. On the contrary, it is made to appear that proper corrections were made, by the officers present, in the ballots, so that they exactly corresponded with the jury list. The law in all respects, as to the thing to be done, was complied with to the very letter. But the point made against the indictment is, that one of the officers discharging the duty was not the officer named by the law. What the law requires was done; but, of the two persons doing it, one was not an officer named in the statute. Now there can be no pretence that prejudice resulted to defendant—that his rights were violated, for all things the law required were performed.

It cannot be that the irregularity complained of affected the power of the grand jury—deprived that body of jurisdiction to find and present the indictment. It will be remarked that the persons composing it were the very individuals selected by the law. Had the sheriff compared the ballots instead of his deputy, no different selection of jurors would have been made. The irregularity occurred in proceedings intended to secure this very end, but that end was just as certainly attained with the irregularity as without it. Now, suppose the grand jury be regarded as a tribunal and the strictest rules applicable to questions of jurisdiction of such a body be applied, can it be pretended that a mere irregularity, of the kind of the one under consideration, will defeat its jurisdiction? What counsel would claim that, because the ballots for the judge of the District Court were not counted and scrutinized by an officer required to do so, that his certificate of election was not signed by the proper officer, that there was some irregularity in conducting his election on account of an officer not named by law participating therein, yet notwithstanding all this, he had the majority of the votes and was legally elected—who would hold, I inquire, that, after being duly commissioned and qualified, his judgments would be void for want of jurisdiction? Yet it is insisted that irregularities of this kind defeat the action of

a grand jury, and require this court to hold a conviction thereunder void. And this is claimed in the face of the Code, § 4538, which requires us, "without regard to technical errors or defects which do not affect the substantial rights of the parties, to render such judgment as the law demands."

But we are not left to arguments based upon legal principles to guide us to a correct conclusion in this case. This court has, by more than one decision, settled a rule the application of which supports the sufficiency of the indictment. It was directly decided in *The State v. Carney*, and in three other cases covered by the same decision, 20 Iowa, 82, that the provisions of the law in regard to the selection and drawing of jurors are directory. The same point was ruled in *The State v. Ansaleme*, 15 Iowa, 44. It is true that in neither decision is the point discussed to any great extent, yet it is directly decided, and in each was the controlling point in the case. That the rule accords with sound reason and recognized principles of the law, I have no doubt. The distinction between mandatory and directory statutes is this: If the thing commanded by a statute is the thing required therein, the law is mandatory. But when the thing commanded to be done is but incidental to the thing required, the statute in that case is directory. When a statute directs proceedings to be done in a prescribed way or manner, which does not appear essential to the judicial mind, it will be held directory. See Potter's Dwarris on Statutes, 221, *et seq.*, and notes; *Shaw v. Orr.* 30 Iowa, 355. In applying these rules we will find that the statute directing the selection of jurors *requires* the given number of lawful men to be selected; this is the thing *required*. The making of the lists, the comparison of the ballots therewith by the officers named, etc., are matters simply incidental to this thing required. It certainly must appear to the judicial mind that if the ballots are truly compared with the jury list by an officer other than the sheriff, it is a deviation in a matter which is not essential. The essence of the thing required by the statute has been attained; it will not be defeated on account of deviation in matters of form and which are merely incidental in their character. To my mind

these views conclusively support the doctrine of the cases just cited.

The provisions for comparing the ballots with the jury list by the officer named in the statute being purely directory, the indictment is not bad by reason of the fact that there was not in this respect a strict compliance with the statute.

*Dutell v. The State*, 4 G. Greene, 125, cited in the majority opinion, holds a doctrine in conflict with the cases cited. The decision was made without reference to either principle or authority and is simply the announcement of a conclusion upon the facts presented to the court. That it is unsupported by principle I have shown. The learned counsel for the prisoner has not cited an authority sustaining it.

While I have proper regard for the decisions of the court, however ancient they may be, and acknowledge my obligation to obey the maxim *stare decisis*, I am not thereby required to follow a case that has been overruled. *The State v. Carney*, and *The State v. Ansaleme*, *supra*, settle principles utterly inconsistent with *Dutell v. The State* — they sap its very foundation by removing its only support and practically, though not in words, overrule it. I am relieved of the responsibility of declaring my readiness to overrule it — that has been effectually done. But I am free to declare that unsupported though it be by precedent and principle, I would hesitate long before I would refuse to follow it, were the later conflicting cases out of the way.

I am utterly unable to discover force in the argument found in the opinion of the majority to support the position therein assumed, that it was essential to the protection of defendant's rights that the ballots should have been compared with the jury list by the sheriff. The position is this, and its statement abundantly refutes it: The act of comparing the ballots was essential to the preservation of the rights of the prisoner; the act was fairly and fully done by an officer not named in the law; while the defendant had the benefit of the act, he suffered prejudice because it was not done by the proper person. This is giving more force and importance to forms and names than we are accustomed to witness now-a-days.

The authorities cited to support the position that "if the trial of a cause should be before a person not authorized to act as judge, a conviction, although obtained in strict accord with all the forms and rules of law in every other respect, would be void," can hardly be disputed anywhere, and it would astonish me to hear any one deny the proposition. The difficulty is in its application to this case. As we have shown, the grand jury was a legal body, notwithstanding the irregularities complained of; it was, therefore, authorized to find and present the indictment. If authorities could be cited holding that a judgment of one filling a judicial position would be void on account of irregularities in his election or appointment, which went to the form thereof, though he was in fact elected or appointed, they would support the conclusion of the foregoing opinion; nothing short of this will.

Great reliance is placed in the foregoing opinion upon Sec. 4337 of the Code, which directs that a motion to set aside an indictment must be sustained if " the grand jury were not selected, drawn, summoned, impaneled, or sworn as prescribed by law." This relates to the manner of doing the acts mentioned, and is to the effect that if that manner is not in compliance with law the jury was not a legal body, and the indictment would, therefore, be bad.

But we have seen that, as to the manner of an act prescribed by statute, the law will be construed as directory when the manner does not appear essential to the judicial mind. Another way or manner will be held a compliance with the law. The section of the Code under consideration, therefore, does not require an indictment to be set aside when the manner of the selection of the grand jury is held to be a sufficient compliance with the statute.

I must be permitted to say that, in my judgment, the opinion of the majority does not harmonize throughout; in truth, there is apparent conflict. It holds that a jury may be selected from a list differing in number from that prescribed by law, or from a list which has names upon it not placed there in the manner required by law. A jury selected from such a list, my brothers hold, is a legal body. But, because the ballots

for the jurors are not compared by the sheriff instead of the deputy sheriff, it is an illegal body. It is impossible upon principle to support an indictment against objections founded upon irregularities of the one kind and to overthrow it because of defects of the other class. There is no distinction that can be made between the one case and the other.

II. In the fifth and sixth points of the opinion of the majority of the court, the indictment is held to be bad because, 1, it fails to allege the names of the persons to whom the money alleged to have been embezzled was loaned; and, 2, it does not charge " the manner in which the money was converted" by defendant.

. I will advance a few general thoughts and announce certain familiar principles of the law before considering separately these objections.

An indictment is sufficient which contains " a statement of the facts constituting the offense in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended." Code, § 4296. It " must be direct and certain as regards: . * * * * 2. The offense charged. 3. The particular circumstances of the offense, when they are necessary to constitute a complete offense." § 4298. It will be observed that, under these sections, nothing further is required in the statement of the crime charged than an averment *of the facts constituting the offense,* and that circumstances of the offense need not be stated *unless they be necessary to constitute a complete offense.* It is very plain that under these sections all that is required in an indictment is the statement of the facts which under the statute constitute the offense. Incidental circumstances, collateral or connected facts, and matters and things not of the essence of the crime, need not be averred. About the best rule for determining when an indictment is sufficient is this: It should present such averments of *facts* upon which the court may determine without the aid of presumptions or intendments that a crime, known to the law, is described therein. It is not sufficient to aver conclusions of law, or to charge a crime by the designation it

bears in the law. An indictment charging an accused with embezzlement, larceny, or robbery, would not be sufficient. The facts constituting these offenses, as they are defined by statute, must be set out. It is also often said that facts which will enable the accused better to plead an acquittal or conviction ought to be set out in the indictment. But this does not extend to facts which constitute no part of the crime itself, and does not require a fuller statement of *facts* than the rule just stated. The courts hold that certain matters connected with the offense, as the name of the party injured, ought to be found in the indictment to point out and identify the crime charged, enabling the party, if again indicted, to plead with greater certainty a previous acquittal or conviction. *State v. McConkey*, 20 Iowa, 574.

In the indictment in the case under consideration, the defendant is charged with the crime of embezzlement. This crime is created by and defined in the statute, cited in the opinion of the majority. The facts to support this charge are in the first count concisely stated, and show: 1, the official character of defendant; 2, that he was charged with the custody of public money; 3, that he had in his possession, as an officer, a sum of money named; 4, that without authority of law he did unlawfully loan a sum named. In the second count it is averred that he did unlawfully and feloniously convert a sum of money named to his own use. The facts here alleged constitute the crime of embezzlement; nothing is wanting to show the crime as it is defined in the statute. There is not a single conclusion of law averred; every allegation is of fact, and the whole is a concise, direct and certain statement of the offense. The defendant is charged with embezzlement. The crime is alleged to have been committed in the first count by loaning money of the State without authority of law; in the second count by unlawfully appropriating the money to his own use.

The crime of defendant, embezzlement, as alleged in the first count, consisted in loaning, without authority of law, the money of the State—the act of loaning was the criminal act. It was not unlawful because the

transaction resulted in injury to another person, or because of necessity another must have sustained to defendant the relation of a borrower. Its unlawfulness consisted in the illegal use of the money. The borrower was not injured; he may have, in no way, participated in the unlawful acts and intentions of defendant, for he may have had no knowledge that the law was being violated. He was, therefore, in no way connected with the crime. I know of no legal principle requiring his name to be set out in the indictment.

In my opinion the cases cited by the Chief Justice, in his opinion, fail to support his position that the omission of the name of the borrower is a fatal defect in the indictment. In no pleading, either in civil or criminal cases, is the bare allegation of fraud, without specification of the act charged to be fraudulent, sufficient. The charge of " making a revolt," like that of fraud, is but a conclusion from facts. Each are precisely like the charge in the indictment before us, that the defendant is guilty of embezzlement. But this charge in the indictment is based upon the facts alleged, among which is the averment that defendant unlawfully loaned the money. These remarks dispose of the Pennsylvania cases cited by the Chief Justice.

Whatever is found in *U. S. v. Ross*, Morris, 164, bearing upon the point in question, was mere *dictum*. The question was not before the court. But it by no means supports the position it is cited to sustain. A charge of obtaining money under false pretenses is certainly, like that of fraud, a conclusion based upon facts.

In *State v. McConkey*, 20 Iowa, 574, the name of the party injured, it was held, should be set out in the indictment.

The obvious reason which may be given is that such person is connected with the crime. Without an injury to some one there would have been no offense.

The ruling in *Allen v. The State*, 32 Iowa, 491, is correct, and, in my judgment, may be supported upon more satisfactory reasons than the one given by the Chief Justice. There can be no offense of selling intoxicating liquors unless there be a buyer; the purchaser is, therefore, connected with the

crime. Upon the principle above announced, the indictment should show the purchaser in order to present a complete statement of the offense. But there may be embezzlement without a borrower of the money embezzled. The crime, it is true, may be perpetrated by loaning the money; but, as we have shown, the borrower in that case may not be connected with the crime. The reasons demanding an averment of the name of the persons purchasing liquors, in an indictment for illegal sales, do not exist in the case of embezzlement to requre that the name of the borrower of embezzled money should be set out. The decision cited is inapplicable to the case before us.

. The reason given by the Chief Justice in support of the doctrine, as I have already intimated, is not sound. It is this: The averment of the name of the purchaser of intoxicating liquors " is necessary to enable the defendant, if convicted or acquitted, to plead such conviction or acquittal in bar of a subsequent prosecution for the same offense." The pleas of *autrefois acquit* or *autrefois convict* may be supported by other evidence than that of the record. Certainly this is true as to the identity of the crime.

As I have shown, the essence of the crime of embezzlement is the appropriation of the money. Loaning without authority of law is a manner of appropriation. If the loaning be in separate sums to different persons it does not make more than one act of appropriation. Certainly, these propositions demand no argument for their support. Now, to require an indictment to contain allegations of the persons borrowing the embezzled fund would be to hold that the manner of the act must be alleged. Surely I will not be required to argue that the *manner* of the unlawful act need not be alleged in an indictment in order to describe a crime. It is not necessary in alleging an assault to aver with which hand, whether right or left, the blows were given, and the number of the blows. In an indictment for larceny it is not required that the manner in which the defendant obtained possession of the property, whether by stealth, deceit or violence, must be alleged, nor is it necessary to show whether the accused

bore away the stolen goods upon his own person or used other means of transporting them.   Yet it is roundly asserted in the opinion of the Chief Justice that "the manner in which the money was converted should be alleged."   From this we understand that where conversion alone is charged, it must be shown just what acts were done in the conversion—where defendant placed the money, or under what circumstances he disposed of it.   If these averments be necessary, they must be supported by proof.   Yet we have held that conversion may be proved by evidence of a demand and refusal to pay.   *State v. Bryan*, 40 Iowa, 379.

No authorities in conflict with these views, after the most patient search, have I been able to discover, but I have found those which, in my judgment, directly support them.

In Wharton's Precedents of Indictments (see p. 284; *et seq.*), I find in no case is the manner of the embezzlement alleged, further than the averment of the conversion of the thing embezzled to the use of the accused.

In *The State v. Orwig*, 24 Iowa, 103, the allegations of the indictment, as set out in the opinion, are, the employment or official character of defendant by which the drafts embezzled were received, his duty to deliver them to the Treasurer of State, and his unlawful and felonious conversion thereof to his own use.   The *manner* of the conversion is not alleged.   No objection was made to the indictment on the ground that the act of conversion was not sufficiently charged.

In *The State v. Foster*, 11 Iowa, 291, I am authorized to conclude the indictment was in the same form, and no objections were made thereto.

In *The State v. Bryan, supra*, the indictment is in almost the precise words of the one under consideration.   Its charging part is in the following language:   "The said James A. Bryan, on, etc., in the county aforesaid, then and there holding the office of treasurer of said county aforesaid, unlawfully and feloniously did convert to his own use and embezzle $41,604.67, which came into the hands of him, etc., by virtue of his office, etc., contrary to the statute," etc.   No objection was made to the indictment.   I am able to call to mind no

case where the rules announced in the Chief Justice's opinion, which I am now considering, were applied.

I, of course, will not be understood as citing these cases on the ground that the point in question is decided by them. But they are authority to show the opinion of the profession upon the question. Counsel for the respective prisoners are among the ablest of the State, and to suppose that they would either not make the point in this court, or are uninformed as to the law, is to do injustice to them, and through them to the profession generally. The opinion of the profession upon questions of law is not without authority in the courts.

The cases are authority to show the views of this court upon the question. We are required by the statute to examine all points in a case without regard to errors assigned, and render such judgment on the record as the law demands. Code, sections 4535, 4538.

If this court has heretofore held indictments in the form of the one now before us good, as under this statute we must have done in order to affirm convictions thereon, it argues, either that our views have changed or that we have defectively, heretofore, in such cases performed our duty. Neither position can be admitted.

In *Brown v. The State*, 18 Ohio St., 496, the accused was indicted under a statute making the conversion of public money, the aiding, advising or participating therein, embezzlement. The indictment charged that the money embezzled belonged to the State, county and several townships, without averring the amounts each was entitled to. The indictment was assailed on the ground that it did not set out the amount belonging to each, but merely the aggregate belonging to all. The court held the indictment good and sufficient to sustain the conviction of the accused.

In *The People v. Guerra*, 31 Cal., 416, the indictment charged the defendant with embezzling a sum of money the property of the State and county. A demurrer to the indictment on the ground that it charged more than one offense was overruled. The court held that "the act of embezzlement charged was an undivided or single act, and, consequently,

the proper mode of stating the offense was according to the fact. The embezzlement set forth in the indictment constituted one offense only." These cases are determined upon the principle that the act of appropriation determines the offense. Certainly if there may be one act of appropriation of several sums owned by different parties, the act of appropriation will be single when the funds all belong to one person and the money is devoted to different purposes by the accused. The manner of defendant's disposition of the money, to whom and in what sums he loaned it, is simply the manner of his appropriation, if we admit that the appropriation could not take place until the loans were made. Now, as we have seen, the manner of the conversion of the funds to his own use need not be stated in the indictment. The statute makes the loaning of public moneys embezzlement—the loaning is the conversion. The manner and circumstances of the loaning need not be stated as it pertains to the manner of conversion.

It must be remembered that the indictment before us does not charge separate acts of loaning—it is charged as one act. The question then is, must the circumstances of this act and the name of the borrower be stated. We cannot under the demurrer presume a state of facts not alleged, viz.: separate acts of loaning, and thereon hold the indictment bad.

I think I have expressed myself at sufficient length to make plain the legal principles upon which I rest my conclusions. I have not attempted to present all the arguments in support thereof that occur to my mind. I am satisfied, however, that further argument is not necessary, and will forbear to proceed further.

The points assailing the indictment were presented by the learned counsel of the defendant in a simple statement of ten lines of his brief. The Attorney-General doubtless regarding, as he was authorized, the points as having been made in no great confidence, as they are unsupported by argument and authorities, replied to them in a paragraph of five lines. We have thus been deprived of argument upon the questions. This is to be regretted, as these able counsel never discuss

before us points of law without throwing upon it all the light that may be had from the books and from thorough argument.

III.   While concurring in the conclusions of that part of the 7th point of the opinion of the Chief Justice, which holds that § 4243 of the Revision is not repealed by the prior sections 796, 797, 806 and 807, I am unable to assent to the principles and reasoning upon which it is based.   I reach the conclusion without difficulty upon these plain and obvious considerations: The defendant was the *Deputy State Treasurer*, and is charged, in one count of the indictment, with unlawfully loaning the money of the State.   The sections of the Revision last cited provide a penalty or punishment for certain acts done by the *State Treasurer*.   By no possibility can defendant be guilty under these sections.   As to the crime with which defendant stands charged, it cannot be pretended that there is any conflict between these provisions and § 4243, and, therefore, as to the indictment in this case, there is no occasion whatever for the construction of the last named section, adopted by the Chief Justice, in order to make it harmonize with the others.   I might well forbear to enter into a discussion of this construction.   The questions decided are not, in fact, in the case, for the very plain reason that there is no other statute for the punishment of the *Deputy State Treasurer* than § 4243.   The decision of the question in the majority opinion is based upon the assumption of a fact which does not exist.   The case, therefore, does not present the points decided.   Whatever is found upon the subject in the opinion must be regarded as mere *dicta*.

· IV.   But I will state, in a few words, considerations which bring me to the conclusion that, whatever view may be taken of the sections in question—conceding even that the prior provisions apply to the Deputy State Treasurer—there is no conflict between them.

1. Secs. 796, 797 do not provide for criminal proceedings and prescribe no punishment for a crime by indictment. They affix a fine or penalty for the acts forbidden, and do not provide that it shall be enforced by indictment.   But they, in express words, provide another proceeding for the

recovery of the forfeiture imposed. Section 797, in express words, directs that the delinquent State Treasurer shall "be prosecuted by the Attorney General in the name of the State for the benefit of the common school fund." Here is a forfeiture imposed, which, clearly, is to be enforced by proceedings other than by indictment. This is not the only instance where fines are to be collected by proceedings in the nature of civil actions. See Rev., Secs. 1992, 2081. The sections in question, by providing a penalty for an act which by other legislation is made a crime, do not repeal such legislation. All that can be said of them is, that they add to the punishment already provided. Certainly, a subsequent statute may increase in severity the punishment of an officer without having the effect of repealing the enactment creating the offense.

2. Secs. 806, 807, make the loaning of the State' money, by its treasurer, a misdemeanor, and provide for the punishment of that offense. Here, clearly, is the creation of a crime and a punishment provided therefor. In my opinion this legislation does not interfere with, or repeal Sec. 4243, which declares the same act to be felony, and prescribes its punishment.

Nothing is better understood by the profession, than that the same unlawful acts constitute different, distinct crimes, or rather crimes of different degrees, but of the same class. Thus, robbery includes larceny and assault; and an assault with the intent to murder includes assault and battery. In our State these and all other crimes are created by statute. Now it will not be pretended that the statute creating one of these offenses repeals another enactment creating a crime of a different degree, but of the same class. I cannot present the point more clearly or forcibly than by using the language of Mr. Bishop, found in his work upon Statutory Crimes, § 171. He says: "The law may, sometimes does, attach two or more separate penalties or punishments—as a fine or forfeiture, or a fine or imprisonment to the same act, and even authorize them to be enforced in separate prosecutions—a proposition which requires some consideration to determine its precise constitutional limits. In such a case, it is, of course, no

objection that the right to prosecute is derived from statutes passed at different times. And the principle is, that, to a considerable extent, offenses are like successive circles of different sizes inclosed within one another, a robbery, for an example, being an assault committed under particular circumstances of aggravation; and that, in these cases, the offender may be convicted of either the simple or aggravated form, at the election of the prosecutor; except that, sometimes, the line between felonies and misdemeanors cannot, in this way, be passed. The several degrees of the same offense have their corresponding degrees of punishment; though when a person has been convicted in one degree, he cannot be convicted in another degree. Therefore, if the new statute adds aggravation not existing in the old law of the offense, and creates a higher penalty, or omits some aggravating quality and provides a lower penalty; or if the new statute is applicable to a particular class only of persons who owe particular duties in the matter; the new punishment does not supercede the old." In a preceding section, 169, the same author says: "Several concurrent remedies of a different nature, carrying with them their respective penalties, may be provided for one offense; and each remedy may stand, penalty and all, without conflicting with the other."

These views and authorities lead me to the conclusion that the statutes in question do not conflict; that each ought to be sustained without any construction limiting or changing the natural force of the language of either. I am not, therefore, required to discuss the correctness of the conclusion in the opinion of the Chief Justice, that the indictment is defective in not charging that the money loaned was " *unaccounted for.*" The statute, as I intepret it, is not to be understood in the sense which drove the majority of the court to the conclusion that such an averment is necessary.

But, even should I adopt the views of the Chief Justice, and read the word "*or*" as "*and*," I could not, with him, conclude that it was, therefore, necessary to aver in the indictment that the money embezzled was "unaccounted for." These words are not used as a description of the offense, but

to indicate a rule by which the extent of the offense, the amount of money embezzled, is to be determined and the punishment of defendant therefor to be graduated.

An officer charged with the *transfer* or *disbursement* of public money is guilty of embezzling whatever sum, so entrusted to him, that he does not "*account for*"—that he fails to show has been disbursed or transferred. The words "unaccounted for," refer to and are to be understood in connection with the words "transfer" and "disbursement" preceding them in the section, just as the words "converted," "invested," "used," are to be understood as referring to "convert," "use," "investment," found in the preceding part of the section.

It certainly is a strange rule that an indictment averring the defendant used and invested, as his own, money of the State, is bad, because it does not allege that he failed to account for it. Yet this is the rule of the majority opinion. It must be remembered that the words "unaccounted for" do not mean *unpaid*, but simply that no account is rendered for the money with which the officer is charged. If then, according to the doctrine of the majority opinion, the defaulting officer, who has used as his own the money of the State and is still using it, render an account for it, he is not guilty of embezzlement. This must be so, else why require the indictment to aver that the money is unaccounted for?

By changing the word "*or*" to "*and*," as is done in the majority opinion, the sense and force of the section is not at all changed, for the structure of the provision and the idioms of our language require us to apply the words, thus coupled by the conjunction, to their proper antecedents, as I have above pointed out.

I forbear from further discussion of the subject; what I have said is sufficient to express my own views, and lead the mind of the reader to a course of inquiry that cannot, in my judgment, fail to carry conviction as to the correctness of my conclusions.

In my judgment the doctrines of the majority opinion are in conflict with sound reason and the authorities. Its rules

exceed in technical strictness the oldest cases. Their applica-
tion in this case, as well as in all others, would tend to defeat
justice. I am th roughly satisfied that the judgment of the
District Court ought to be affirmed.

### OPINION ON REHEARING.

COLE, J.—Since the opinion in this case was filed and judg-
ment entered in accordance therewith, the Attorney General
has, within the time prescribed for filing such petition in a
civil action, filed in this case a petition for rehearing. With-
out now determining whether such a petition can properly be
filed in a criminal cause, or if so, whether it would be com-
petent to change the judgment so as to make it more burden-
some to the accused, we proceed to state our views in reply to
the petition for rehearing in this supplemental opinion.

I. The opinion of the court heretofore filed determined
two classes of questions respecting the legality of the consti-
tution of the grand jury. One class was as to the effect of
mere irregularities in failing to follow the directory provisions
of the statute, such as the failure of the judges of election to
return the proper number of names for grand jurors, the selec-
tion of a jury from a list containing a less number than pre-
scribed by statute, the irregular manner of supplying names
to fill up the list, etc. These were held to be mere irregulari-
ties which did not affect the legality of the grand jury or
work a prejudice to the substantial rights of the accused. In
so holding the court followed *The State v. Carney*, 20 Iowa,
82; *The State v. Knight*, 19 Iowa, 94; *The State v. Rohra-
bacher*, Ib., 154; *The State v. Adams*, 20 Iowa, 486, and
other cases.

The other class was as to the effect of the drawing or com-
paring the list of the grand jury by a person not authorized
by law, and by a person prohibited by the statute from so
doing. This was held to render the constitution of the grand
jury illegal. In so holding the court followed the case of
*Dutell v. The State*, 4 G. Greene, 125. See, also, *Baker et
al. v. The S. B. Milwaukee*, 14 Iowa, 220. Twenty-two pages

of the petition for rehearing in the case are occupied in an unnecessary effort to convince the court that the decision of *The State v. Carney, supra,* and other cases followed as above, were wisely decided. We thought so before, and therefore followed them. But none of these cases involve the question decided in *Dutell v. The State,* and only decide questions not involved in it.

The case of *Dutell v. The State* was decided in 1853 by an unanimous court, and has remained unquestioned by either the bench or the bar from that day to this. It decided that " the county judge and sheriff are authorized by the Code to compare and correct the list of grand jurors, and the deputy sheriff is precluded by section 412 of the Code from acting thus in conjunction with another officer; consequently a list of grand jurors compared and corrected by the county judge and deputy sheriff is not a legal jury and therefore not authorized to find an indictment." In that case, as in this, the list of grand jurors was compared and corrected by the deputy sheriff, in conjunction with the other officer named in the statute; and the court below refused to set aside the indictment for that reason, and on appeal to the Supreme Court the judgment was reversed and the indictment was set aside.

The section of the Code involved in that case, being section 412 of the Code of 1851, is in the very words of section 643 of the Revision, which was in force when the grand jury was drawn and the indictment found, and is as follows; " In the absence or disability of the principal and in the cases provided for in the chapter relating to vacancies the deputy shall perform the duties of his principal pertaining to his own office; but when an officer is required to act in conjunction with, or in the place of another officer, *his deputy cannot supply his place.*" That case also involved the construction of section 1640, of the Code of 1851, which is in precisely the same language as section 2730 of the Revision; that section provided that the lists of grand jurors should be made by the clerk and the names of the jurors be written on separate ballots, " and the judge of the county court and sheriff having compared said ballots with the jury list and rectified the same if neces-

sary, shall place the ballots in a box provided for that purpose."

For more than twenty years these statutes, as construed in *Dutell v. The State*, were allowed to remain unchanged; and, as if to add special approval to the construction there given, and to intensify the approval of that construction, which declared illegal an indictment found by a grand jury where the lists were compared by the *deputy* sheriff, the legislature in adopting section 240 of the Code of 1873, which is the corresponding section to 1640 of the Code of 1851, and section 2730 of the Revision, has expressly provided that the list may be made by the auditor or his *deputy* and that the comparison shall be made by the clerk of the District Court, or his *deputy* and have retained intact the provision that the comparison must be made by the sheriff *in person*. This change, embodied in section 240 of the present Code, shows that the legislative attention was called to the propriety of giving the power to compare the list to the deputies of the officers named; for it does give that power to the deputy clerk, while it denies it to the deputy sheriff. How is it possible, in view of this previous judicial construction and legislative action, for even an over-zealous counsel to come to any other conclusion than that it is the clear purpose of the law to prohibit the deputy sheriff from doing the act which was done in this case, is almost beyond comprehension. The use of negative words renders a statute mandatory. See Cooley on Constitutional Limitation, p. 75. The same line of reasoning which would permit the deputy sheriff to compare the list, would dispense with the comparison altogether. When a statute is positive, it is for the legislature to change or abrogate it. It is the duty of the court to interpret it; and it is enough for the court to say, *Ita est scripta lex*.

But it is insisted that by the Revision, section 2945, " The Supreme Court must examine the record and, without regard to technical errors or defects which do not affect the substantial rights of the parties, render such judgment on the record as the law demands."

This section, however, is the same in effect as the law in

force when the case of *Dutell v. The State* was decided.   Sec. 3097 of the Code of 1851 was in these words: "The Supreme Court must give judgment without regard to technicalities or defects, which do not affect the substantial rights of the parties." It is, however, further urged that the record in this case shows that the ballots prepared by the deputy auditor and compared by the deputy sheriff correspond with the list of the grand jurors. This is not true in fact; and while it is made the basis of very much of the rhetoric of the petition for rehearing, it has no other existence than in the imagination and wishes of the learned Attorney General. Upon this subject Mr. Baker, the deputy auditor, testifies, "I took no other part in drawing the jury than to make the lists and the ballots; but I was present and made some corrections on these ballots. The clerk, sheriff and auditor, when they made the drawing, found that I had made some mistakes in the names in drawing off the list, and they corrected them." From this it appears that the comparison made by the deputy was very certainly *not correct*, and the list did not contain the correct names of the grand jury; some of the errors, it seems, were discovered incidentally by the officers while they were engaged in drawing the jurors. That they discovered all the errors is not shown, nor claimed; but that there were errors made by the deputy in comparing is shown by the agreed abstract from page seven of which we have quoted the above. The testimony of McClelland, the clerk, also shows that there were further errors. We have, then, the statute prohibiting the deputy from acting; we have the fact that he did act contrary to the statute; we have the fact that he committed errors, and have no showing or anything from which we may properly infer that the defendant was not prejudiced in his substantial rights thereby. In view of these facts and considerations we see no escape, if we are to regard the *law* alone, from the conclusion that the indictment should be set aside.

II.   Respecting the necessity of charging in the indictment the name of the person to whom the money was loaned, it is

sufficient to say that, in the original opinion, this point was not definitely decided.

III. The petition for rehearing betrays an evident misapprehension of the opinion upon the point of the insufficiency of the indictment in charging an offense, for that it does not charge that the money loaned *was unaccounted for*.

The section under which the indictment was found reads as follows: "Sec. 4243. If any officer within the state, charged with the collection, safe keeping, transfer or disbursement, of the public money, convert to his own use in any way whatever, or use by way of investment in any kind of property, or loan without the authority of law, any portion of the public money intrusted to him for collection, safe keeping, transfer or disbursement, every such act is an embezzlement of so much of said money as is thus taken, converted, invested, used, loaned or unaccounted for, and upon conviction thereof he shall be imprisoned," etc.

The fair construction of this section, alone and disconnected from any other section of the statute, must lead to the results reached in the former opinion. The subsequent legislation there referred to only tends the more unmistakably to approve that construction.

The section above quoted, under which the indictment is found, defines three acts as felonies, to-wit: The unlawfully converting the public money by an officer to his own use; using by way of investment; and the loaning without the authority of law. These acts, and these only, are declared to be embezzlement. What follows in the same section is evidently to define the extent of the embezzlement. If the mere converting, using or loaning was of itself an embezzlement of the amount so converted, used or loaned, (which is the construction contended for by the Attorney General,) then the natural and direct mode of stating that idea would be, "every such act is an embezzlement of the money thus converted, used or loaned," etc. The idea, however, expressed in the statute, is that such act of converting, using or loaning is not an embezzlement of the money converted, used or loaned, but

8. ——: embezzlement: what constitutes.

may be an embezzlement of but part of it. For the statute says that every such act is an embezzlement of *so much* of said money as is converted, used or loaned, etc. If it is an embezzlement of *so much* of said money, the question arises, of how much? The Attorney General says, of all that is used, loaned or unaccounted for. It is evident, however, if this construction is correct, that the words "so much" are improperly used, and that the idea would have been expressed by the article "the"; and, further, by such construction no force or effect whatever is given to the words "unaccounted for," since the words "converted, used or loaned," express and include all and more than all that is embraced in the words "unaccounted for," and the construction is just the same as though those words had not been employed. Such construction, therefore, must be rejected, for it is a well settled principle and rule of construction, that force and effect must, if practicable, be given to all the words employed.

It is conceded by the petition for rehearing, and the authorities cited prove it, that when it is necessary to harmonize the provisions of a statute, the word "or" may be changed to "and"—that is, that the conjunctive may be changed for the disjunctive, and *e converso*. Now, by making this change the whole section becomes harmonious, and effect is given to all its language. Every such act, then, is embezzlement, not of the money loaned, etc., but of *so much* of the money as is converted, used, loaned and "unaccounted for."

9. CONSTITU-
TIONAL law:
construction
of statute.

By this construction, too, the propriety and wisdom of the subsequent legislation can be vindicated. There was great propriety in making it a misdemeanor for a state or county treasurer to loan the public money, if such loaning was not before an offense; but this subsequent statute can neither be vindicated or explained upon the notion that this offense declared by it to be a misdemeanor was before, and for many years had been, a felony, punished with a much severer penalty. The legislature doubtless viewed the statute as being properly construed, as we have above interpreted it, whereby the loaning of and failing to account for the public money by

a public officer was declared a felony; and with a view to prohibit the bare loaning of such money under any circumstances, enacted by the statute of 1858, which is copied in the Revision, making the loaning a misdemeanor, and visiting such offense with the penalty of a fine, and the fine was made sufficiently large, within the discretion of the court, to deter from the violation of such statute. At all events the fine prescribed is the full measure of the liability for the offense defined. To now hold that the legislature construed the statute differently from the plain import of its language, as above construed, and that it made the bare loaning of the public money a felony, for which a guilty party could be sent to the penitentiary, and thereupon deliberately enacted that for precisely the same offense the guilty party should be punished only with a fine, would be to convict the legislature of extreme folly. We are not required to do this either by the language of the law or by any precedent we have seen.

The former opinion of the court herein referred to the other legislation, and the construction of the section in question as being necessary in order to harmonize all the statutes, and by no fair implication can it be said that the opinion sought to change by construction an earlier statute in order to harmonize it with the later; but rather that the meaning of the earlier statute was so manifest and plain as that the legislature placed upon it the same construction we have, and must have done so, for otherwise their later legislation would be either a nullity or an absurdity.

IV. It is urged lastly that under section 4906 of the Revision, we have no jurisdiction until after final judgment, and that we cannot entertain an appeal from a judgment overruling a demurrer or motion to quash. This point was not made, nor even hinted at, until the petition for rehearing was filed.

The abstract shows that the appeal was taken from a decision of the court overruling a demurrer to the indictment, and a motion to set the indictment aside. The abstract contains a stipulation of the district attorney that the cause

may be submitted on that abstract, which is agreed upon to be correct. The only authority cited and relied upon by the Attorney General in favor of the position he assumes is the case of *The State v. Fleming*, 13 Iowa, 443. The question here presented was not involved in that case; and what is said upon it by the judge delivering the opinion is the merest *dicta*. In that case, by the statement, it appears "the defendant was accused of intoxication, was found guilty, and sentenced to pay a fine of ten dollars and be imprisoned for thirty days." We quote from the opinion the following, which will show the real point determined in that case. "Baldwin, Ch. J. In this cause an agreement was made between a district attorney and the attorney for the defendant, that an appeal might be taken by the defendant to the Supreme Court, notwithstanding the fact that *more than one year* had expired after the *judgment* of the District Court had been rendered. The Attorney General now asks that the cause be stricken from the docket, denying the power of the district attorney to make any agreement which would waive or prejudice the right of the State in this court. * * * * If a party fails to prosecute the remedy by appeal for one year after judgment, such right is forever at an end, and this court has no power to entertain jurisdiction of a cause after this time has elapsed. Nor do we think that the consent of the attorney for the state can confer such jurisdiction. Dismissed."

*10. APPEAL: final judgment unnecessary.*

The difference between the point involved in that case and in this is too apparent to justify citation in this.

We have no doubt that we may acquire jurisdiction before the final judgment where both state and defendant consent, or no objection is made, as is the fact here.

The history of this case both illustrates and vindicates in a striking manner the propriety of entertaining such an appeal. This indictment and several others, including seven against this defendant for embezzlement, were presented to the District Court of Polk county at its April Term, 1874, when the Hon. H. W. Maxwell was the judge of that court. Motions

to set aside these indictments against the defendant on the ground of illegality in selecting the grand jury were made before Judge Maxwell and by him *overruled*. In January, 1875, Judge Maxwell's term expired and Hon. John Leonard became judge of the court. Motions to suppress other indictments found at the preceding April Term, not passed upon by Judge Maxwell, were presented to Judge Leonard and were by him *sustained*, the two judges thus holding in opposition to each other upon the question of the legality of the grand jury. One of the indictments against this defendant came on for trial before Judge Leonard and the defendant was convicted. A motion in arrest of judgment was made on the ground of the illegality of the grand jury. Here was a dilemma; Judge Leonard believed and had held the grand jury illegal, and yet did not wish to review and set aside the judgment of his predecessor, Judge Maxwell, upon the particular indictment which he had held valid. Hence the appeal in this case for the purpose of advising the District Court what action to take. This court was led to believe that the state and the defendant were equally anxious to have the appeal entertained and the point determined. We were never advised to the contrary or had any ground to suspect it, until the objection was made in the petition for rehearing. The Attorney General joined with the defendant's counsel in open court, at the time the cause was submitted to us, in a request for an early decision of the case in order to relieve the District Court from its dilemma; and the Attorney General then stated that he made the request upon the desire of the District Judge.

In view of these facts, we cannot forbear to quote the language of the Supreme Court of the United States in *Williams v. Baker*, 17 Wallace, 144, (*i. e.*) 152: " Whatever, therefore, may have been the design of the parties to the suit,    *    *    *    *    it is clear that the question here involved was argued fully by the parties deeply interested on both sides, and received the attentive consideration of the court, and as an authoritative exposition of its views is entitled to the same weight as other well considered cases." And to quote further

from the same opinion (page 150) "we must.be permitted to question both the taste and legal competency" in seeking for the first time to raise the question of jurisdiction after the cause has been deliberately determined upon full argument, and in seeking so to raise it by petition for rehearing.

That the Supreme Court, both by the constitution and laws, has full and exclusive jurisdiction to hear and decide appeals from the District Court in criminal cases is not and cannot be questioned. The particular point here made is, that the appeal cannot be taken until after a final judgment has been rendered. If this were so, yet it would not deprive the Supreme Court of its constitutional jurisdiction to hear and decide the appeal—the objection only relates to the time and manner of taking the appeal. While consent cannot confer *jurisdiction*, yet parties by consent may waive the *process* or other regulation prescribed for bringing the subject matter or case before the court clothed with jurisdiction to decide it. This is all that was done in this case, even as claimed by the Attorney General. It is claimed that the defendant had no right to take the appeal until after the final judgment. But while he might not, as a matter of right under the statute, be entitled to take the appeal, yet he might, by consent of the proper officers, take it, and in whatever manner the appeal is taken, there can be no question as to the jurisdiction of the court to decide it.

But aside from these facts and the consent, there can be no question that the court had jurisdiction of this appeal. By Code of 1851, Sec. 3090, it was enacted: "No writ of error can be sued out in a criminal action until *final* judgment has been rendered." Under this section it was held that an appeal could not be taken even by consent until final judgment has been rendered. *Ritter v. The State*, 1 Iowa, 99. But, by the Revision of 1860, it was enacted, Sec. 4904, "The mode of reviewing in the Supreme Court any judgment, action or *decision* of the District Court in a criminal case is by an appeal." Sec. 4906. "No appeal can be taken until after judgment, and then only within one year thereafter." (Code of 1873 is the same as Revision. See sections 4520–4522.)

It will be seen that the word "final," as used in the Code of 1851, is omitted from the Revision. Hence, if there is a judgment upon the action or *decision* of the District Court, although it may be an interlocutory judgment, that is, not a final judgment, an appeal will lie. In this case the defendant moved to set aside the indictment, and also filed a demurrer thereto. The court overruled both, and entered its decision thereon upon the record, in form and effect as a judgment of the court, that the indictment was legally found and legally sufficient. From that decision and judgment, which was conclusive and would everywhere be held as a *res adjudicata* between the parties, the defendant appealed, and that appeal gave to the Supreme Court jurisdiction of the case. Neither the language nor the spirit of the statute, nor the public interests, would justify us in limiting appeals to final judgments, since the legislature has rejected the word "final" from the statute. Wherever there is an action or decision by the court and judgment thereon, the right of appeal is given. If it was a decision upon the question of evidence or the like, no judgment could properly be entered, and hence no appeal would lie. But in a case like this, where the motion or the demurrer involves the merits of the cause, or the legality of the proceedings, and the court decides such motion and makes the same of record, in the nature of a judgment, there can be no room for a reasonable doubt that the right of appeal must and does exist.

The petition for rehearing is, therefore,

OVERRULED.

BECK, J., *dissenting.*—I. The additional examination I have given this case, upon the petition for rehearing, has deepened my conviction of the errors of the majority opinion heretofore filed. The foregoing supplemental opinion by Mr. Justice COLE, in my opinion, fails to answer the arguments that have, at different times, been advanced in this court in support of the sufficiency of the proceedings in the case, and the correctness of the judgment of the District Court. I will, that the questions involved in the case and the positions I

take may be clearly understood, briefly notice some of the arguments advanced in the supplemental opinion.

II. That *Dutell v. The State* supports the decision announced by my brothers may be, and I think has been, conceded. But that it is overruled by the subsequent cases of *The State v. Carney* and *The State v. Ansaleme*, and the other cases cited, the opinions of the majority have failed successfully to deny.

III. What element in a case constitutes a *precedent* to be followed as authority? It is the legal principles therein announced—the rules—the legal formulæ, which were applied to the facts found in the case and led the court to the decision settling the rights of the parties. See my remarks upon this subject in *The City of Dubuque v. Ill. Cent. R. Co.*, 39 Iowa, 79. The facts constitute no part of the precedent; they are only considered to determine what rules, what legal formulæ, were recognized and applied in the case. Rules found in a case may be applied to another wherein the facts are not the same. If the precise question of law occurs in two cases having different facts, it must be decided in each by the same legal rule. If a question has been determined in a case and again arises, the prior decision must be followed, though the facts of the last case differ from the first. Of course, I am not speaking of such differences in fact as present different questions of law, but only of such as involve the same legal questions.

Now, if we find an old case wherein the decision is based upon a certain legal principle arising upon given facts, and also discover more recent cases wherein are different facts, which must be, however, governed by the same legal rules as those of the first, and the principles, the legal rules, applied in the last cases are different from those applied in the first, we must admit that the older and later decisions are in conflict. If this conflict is not to be reconciled, we must hold that the last decisions disregarded, set at nought, *overruled*, the first. Under these circumstances we are required to follow the last decisions,—certainly, if they be more in accord with reason than the prior one.

*Dutell v. The State* held, that in a case where a deputy sheriff aided in comparing the ballots for the selection of a grand jury, with the jury list, the grand jury, drawn with such ballots, was illegal. The principle of that decision, the legal rule applied, is that the requirement of the statute, imposing the duty of comparing the ballots upon the sheriff, is mandatory and not directory, and its disregard defeats the act when done by the sheriff's deputy. The decision could not have been based upon any other principle. No principle is announced in the opinion, but this one will alone support the ruling. It will be noticed that the facts of the case involve the proceedings, or steps, provided by law to be taken in the selection of the grand jury; one of these steps was not taken, the law in one particular was not followed. It cannot be claimed that the omitted step was required with any more positiveness by the law than any other one provided for in selecting a jury—they are all demanded by the statute in the same language, and it cannot be pretended that one is more important than another.

IV. In the subsequent cases of *The State v. Carney,* and *The State v. Ansaleme,* in the selection of the grand juries it appeared that the clerk performed duties required of the sheriff, the judges of the election failed to perform duties required of them, and the juries were selected from a list less in number than is required by law. Now, the statute requiring the particular acts which were not done, or which were done in a manner differently than is required, is the identical statute requiring the sheriff to compare the ballots for the jury—the different provisions of the statute applying to the different officers, and requiring the different acts. The things to be done under the statute are all of the same character and have the same object, namely, the selection of a grand jury.

The court in the two cases last cited, which have been followed in other decisions of this court, held that the departures from the requirements of the law did not invalidate the acts of the grand jury and render it an illegal body. The decision was based upon the principle that the requirements of the

statute are directory simply, and not mandatory. If the statute be directory in requiring the clerk to do a particular duty, or when it requires a jury to be selected from a given number of names, it must be directory when it requires the sheriff to do a specified duty. From this conclusion there can be no escape.

It thus appears that there is an irreconcilable conflict between *Dutell v. The State*, and the later cases. The former case was disregarded, held for nought, overruled by the later decisions. Under the doctrines of the cases last named it may be admitted that the act of the deputy sheriff was a nullity; but, being required by a directory statute, its omission did not render the grand jury illegal. In this view the provision of § 707 of the Code cannot lead to a different conclusion. The deputy sheriff, not being the officer required by law to compare the ballots with the list, his act was that of a mere stranger, and was not the act required by law. But, in the absence of the act required, as the statute prescribing it is directory, the jury selected was not illegal.

V. Neither of the opinions of the majority of this court has answered these arguments. They are based upon the ground that the decisions in the cases last rendered are not in conflict with *Dutell v. The State*. They ignore the fact that the same legal rules are applicable to all of the cases—that there is no such difference in facts as to demand the application of different principles to the respective cases.

VI. While it does appear, as is stated in the majority opinion, that certain errors in the jury list and ballots were corrected, it is not shown nor is it claimed that there were any other errors that were not corrected. I am, therefore, authorized to conclude that the grand jury, drawn and impaneled under the proceedings which are held fatally defective by my brothers, was the identical jury—composed of the identical persons, required by law. If the sheriff had performed his duty instead of intrusting it to his deputy, the result would not have been different. The ballots, when put into the box and when drawn, as I understand the record, did correspond precisely with the list. If, then, it be true, as

20. ——: jury: informality.

is stated in the supplemental opinion, that there were corrections made in the ballots, they did finally conform to the list and were correct. Where is the prejudice to defendant? Surely the law, at this day, will not defeat such legal proceedings upon the merest technicalities, against the positive and direct showing that no prejudice has been wrought to defendant. Code, § 4538.

' VII. With a few remarks upon the construction of the 'statute under which the defendant was indicted, and the jurisdiction of this court, I will close my discussion of this case. ·I will not 'repeat the thoughts upon the points found in my first dissenting opinion, though probably so briefly expressed there that they have failed to attract the attention of my brothers.

It is well said by Mr. Justice COLE that the statute "under ·which the indictment was found defines three acts as felonies, to-wit: the unlawful converting of public moneys by an officer to his own use, using by way of investment, and the loaning without the authority of law. These acts and these only are declared to be embezzlement. What follows in the same section is evidently to define the extent of the embezzlement." As we agree upon the doctrine of this question, let it be regarded as settled.

The defendant is indicted for two of the acts above specified, in separate counts the first count for loaning, the second for converting, the money of the State to his own use.

The term "unaccounted for," which has given us so much trouble, occurs in that part of the section which, Mr. Justice COLE says, is intended to define the extent of the crime. It is, under the rules of our language, connected with the preceding words, *taken, converted, invested, used, loaned,* by a conjunction understood between each.

Now, it is plain that each of these words cuts as important a figure in the construction of the section as the term "*unaccounted for.*" The indictment, then, ought to allege in each case, if the construction given the statute in the opinions of

the majority be correct, that the money was *taken, converted, invested, used and loaned*, as well as *unaccounted for*.

The first count which charges that defendant loaned the money, therefore, should allege that it was, *invested, used, converted and unaccounted for;* the second count, which charges the conversion of the money, should allege that it was *loaned, invested*, etc., etc.

But this cannot be admitted; yet the construction of the section adopted by the court absolutely leads to. this result.

Remembering the conclusion of Mr. Justice Cole, announced in the above quotation from his opinion, that these words serve no other office than " to define the extent of the embezzlement," we find each relates to the antecedent words or phrases used in defining the crime or crimes as its meaning requires. But as they are used only " to define the extent of the embezzlement," and as no part of the definition of the crime, they need not be repeated in the averments of the indictment. The punishment, it will be observed, is graduated by the extent of the crime. The indictment alleges the extent by proper averments of the amount embezzled. If it be shown by the state, upon the trial of the indictment, that such a sum was in defendant's hands, which upon demand he refused or failed to pay over to his successor, or one authorized by law to receive it, this is sufficient evidence to warrant a conviction. But, as a defense to the indictment, he may *account* for the money by showing its lawful disposition. *State v. Bryan*, 40 Iowa, 379. If the defendant fails to make and establish such a defense, the money is said to be *unaccounted for;* he is, in that case, convicted and punished by imprisonment and a fine, graduated by the amount of money which is so *unaccounted for*.

VIII. Upon the question raised by the Attorney General in his petition for a rehearing, involving the jurisdiction of this court, I will submit a few brief observations.

It is insisted by the Attorney General that, as no final judgment has been rendered in the case by the District Court, an appeal will not lie from the decision of that court upon the demurrer and other intermediate orders. The point raised must be determined upon the

22. APPEAL: lies only from final judgment.

statutes regulating appeals to this court, it being remembered that we possess no jurisdiction not conferred by statute, and can acquire authority to determine no question except in the manner prescribed by law. While this is a court for the correction of the errors of inferior tribunals, we can only exercise our authority over subjects and in the manner prescribed by the statutes of the state.

Code § 4522, (Rev. § 4906,) provides that in criminal cases "no appeal can be taken until after judgment." What is meant by the word *judgment* as here used? Chapter 33, Title 25, which precedes, save one, the chapter in which the section first quoted is found, treats of the *judgment* in criminal cases. The word occurs therein twenty-one times and in every instance means the final disposition of the case, the discharge of the prisoner or his sentence of punishment. It is used in no other sense in the chapter. In the following chapter it occurs sixteen times, and in every instance has the same meaning. In the chapter wherein the section quoted above, 4522, is found, it occurs but once in a preceding section and there with a like meaning, and in every instance where it is used in the following sections of the chapter it is intended to express either the sentence of punishment, or the discharge of the prisoner. The conclusion is irresistible that it means nothing else in the section quoted, and that under it appeals in criminal cases can only be taken from the judgments which are final in their nature.

But the statute provides differently in civil cases. In these appeals may be taken from many intermediate orders and decisions. See Code, § 3164. Had the legislature intended that like practice should prevail in criminal cases, it would have been provided for in express terms.

If the statute does not clothe this court with jurisdiction to entertain appeals except from final judgments, we cannot acquire the authority from the agreement of the parties, in cases where such judgments are not rendered. In such cases the subject matter is not brought within the reach of our jurisdiction by proceedings or action of the court below, which are prescribed by law as necessary for that purpose. If it

were within the reach of our jurisdiction, parties could waive, by consent, process on matters of that kind, necessary to bring it before this court.

. Inasmuch as there is no power in the state to review our decisions, we should, where jurisdiction is not clearly, expressly, conferred by legislative enactment, refuse to exercise authority. Unless we be restrained by this rule our jurisdiction may be extended to subjects not contemplated or intended by the law-making power of the state. I believe the rule I have stated is recognized by the authorities.

There is no question of the liberty of the citizen involved upon which an argument may be based for extending our jurisdiction beyond the express provisions of the statute. All the questions now before us may be determined after final judgment in the District Court. The liberty of the defendant would, in that case, be protected and we would run no hazard of overstepping the bounds prescribed for our jurisdiction by law.

Upon the point of propriety and taste raised by my brothers against the action of the Attorney General, in now urging the objection to our jurisdiction, I have nothing to say, except that these are matters that ought to have no weight in the administration of the law. It ought never to be too late for a court to inquire into its own jurisdiction.

I will not farther consume time in the discussion of the points considered in the supplemental opinion. In my judgment, the action of the District Court ought, upon the grounds presented in this and my first dissenting opinion, to be affirmed.